UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| PEARSON EDUCATION, INC. and MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>C & N LOGISTICS, INC., RUSSELL TODD WHITE, and SHAWN CHADWELL,<br><br>Defendants. | Case No. 3:18-cv-00438<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Barbara D. Holmes |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Plaintiffs Pearson Education, Inc. and McGraw-Hill Global Education Holdings, LLC (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Motion to Dismiss.

Each of Defendants' counterclaims should be dismissed for failing to state a plausible claim upon which relief can be granted. Defendants' First and Second Counterclaims for declaratory judgment are repetitious and unnecessary, as they merely state mirror issues that Plaintiffs have already presented to this Court—namely, whether Defendants are liable for infringing Plaintiffs' trademarks and copyrights through the importation and distribution of counterfeit copies of Plaintiffs' textbooks. Under Sixth Circuit precedent, such "mirror image"

counterclaims should be dismissed, because they serve no useful purpose and would be rendered moot by the adjudication of Plaintiffs' claims.

Defendants' Third and Fourth Counterclaims for tortious interference with contract and with business relations should be dismissed because, even construing the allegations in the light most favorable to Defendants, such allegations fail to establish all necessary elements of each claim. Defendants' tortious interference claims are also subject to dismissal under the Noerr-Pennington doctrine, as Plaintiffs' conduct about which Defendants complain was part and parcel to their efforts to protect their intellectual property rights and seek redress in court.

## I.  FACTUAL BACKGROUND

Plaintiffs are leading educational publishers who develop, market, and sell textbooks. Plaintiffs' Amended Counterclaim ("Am. Compl.") ¶ 2 at 1-2. They are the owners or the exclusive licensees of the rights in copyright to the textbooks at issue and the rights to trademarks that appear on such textbooks. *Id.* ¶¶ 18-19 at 4. Plaintiffs invest heavily in creating and publishing their textbooks and building a reputation of quality in the publishing industry. *Id.* ¶ 19 at 4.

In the Complaint, Plaintiffs allege that Defendants have imported from overseas and distributed in the United States hundreds, or more, counterfeit copies of their textbooks. *Id.* ¶ 20 at 4-5. Plaintiffs' Complaint is premised entirely on the claim that the textbooks at issue are unauthorized, counterfeit copies of Plaintiffs' titles. Plaintiffs make no allegations about Defendants' importation or distribution of authentic books.

Defendants responded to the Complaint by filing an Answer and four counterclaims against Plaintiffs. At the center of all the counterclaims is a transaction between Defendants and MBS Textbook Exchange, Inc. ("MBS"). Plaintiffs referred to this transaction in the Complaint,

though they did not refer to MBS by name.  Am. Compl. ¶ 22 at 5 ("In April 2017, Defendants distributed numerous counterfeit copies of Plaintiffs' Books, covering at least 14 separate titles, to a national book distributor in the United States.").  As stated in Defendants' counterclaims, this national book distributor is MBS, and the transaction at issue involved the sale of 767 copies of fourteen of Plaintiffs' textbook titles.  C&N Countercl. (Docket No. 22) ¶¶ 10-12 at 10; Chadwell Countercl. (Docket No. 23) ¶¶ 10-12 at 10.

Plaintiffs allege that Defendants each were responsible for importing these books and distributing them to MBS.  While Defendants may dispute that characterization of their role, it is uncontested that Defendants gave MBS an invoice for the books that listed "C&N Logistics" as the invoicer and "Tadley, Inc.," a "payments processing company contracted by C&N to receive payments," as the payee.  *Id.*; C&N Countercl. Ex. 1 (Docket No. 22-1) at 6.  Defendants claim that the original source of the books listed on the invoice was "Aika," a company located in Amman, Jordan.  *Id.*; C&N Countercl. Ex. 4 (Docket No. 22-4).

When MBS received and inspected the books, it suspected them to be counterfeit. Plaintiffs' First Amended Complaint ("Am. Compl.") ¶ 21, at 5.  In accordance with arrangements between MBS and Plaintiffs, MBS surrendered the books to Plaintiffs for further inspection, without informing Plaintiffs of the source of the books, and Plaintiffs confirmed the counterfeit nature of the books.  *Id.*  Thereafter, MBS disclosed C&N as the source of the books to Plaintiffs, and Plaintiffs' counsel engaged in the communications with C&N, through Defendant White, that Defendants reference in and attach to their counterclaims.  *Id.*; C&N Countercl. ¶¶ 17-25 at 11-12; C&N Countercl. Exs. 2-4; Chadwell Countercl. ¶¶ 17-22 at 11-12. At each turn in these communications, Plaintiffs asserted, and continue to assert in this suit, that

the books at issue are counterfeit.  C&N Countercl. ¶ 17 at 11; C&N Countercl. Ex. 2 (Docket No. 22-2) at 3; Chadwell Countercl. ¶ 17 at 11.

## II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mawdsley v. Kirkland's, Inc.*, No. 3:13-CV-0462, 2013 WL 5754947, at *1 (M.D. Tenn. Oct. 23, 2013) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  Legal conclusions couched as factual allegations are not entitled to a presumption of truth; nor are recitations of the elements of a cause of action sufficient.  *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Rather, the pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## III. ARGUMENT

### A. Defendants' First and Second Counterclaims (Declaratory Judgment Claims) Fail to State a Claim.

#### 1. Defendants' Claims Are Redundant, Mirror Images of Plaintiffs' Claims.

Defendants' First and Second Counterclaims fail to state a claim and should be dismissed because they merely address the same issues already presented in the Complaint.  While the decision to grant a declaratory judgment is within a court's discretion, there are guiding principles that apply.  A declaratory judgment is favored "(1) when the judgment will serve a

useful purpose in clarifying and settling the legal relationships in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990) (abrogated on other grounds). If neither of these goals can be accomplished, as is the case here, the court should decline to issue a declaratory judgment. *Id.*

In accordance with these principles, a counterclaim for declaratory judgment does not survive a motion to dismiss where it merely presents a redundant "mirror image" of a claim in the complaint. *See, e.g., Malibu Media, LLC v. Ricupero,* 705 F. App'x 402, 405-06 (6th Cir. 2017) (affirming dismissal of declaratory judgment counterclaim for non-infringement of plaintiff's copyright, where resolution of plaintiff's infringement claim would render the counterclaim moot). Indeed, in this scenario, "the counterclaim serves no purpose." *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289, 1987 WL 37488, at *3 (6th Cir. 1987) (affirming denial of a defendant's motion for leave to amend its answer to add a redundant counterclaim). Accordingly, district courts in this jurisdiction dismiss redundant counterclaims, including those seeking declarations of non-infringement, that would serve no useful purpose and would be rendered moot upon adjudication of the corresponding claim. *See, e.g.*, *Mawdsley v. Kirkland's, Inc.*, No. 3-13-0462, 2013 WL 5754947, at *2 (M.D. Tenn. Oct. 23, 2013) (dismissing counterclaim seeking mirror-image declaratory judgment for non-infringement of plaintiff's copyright); *Richmond v. Centurion Exteriors, Inc.*, No. 3:10-0734, 2010 WL 3940592, at *2 (M.D. Tenn. Oct. 6, 2010) (dismissing counterclaim for declaratory relief that would be rendered moot upon adjudication of the complaint).

Defendants' First Counterclaim (Declaratory Judgment of Non-Infringement of Plaintiffs' Marks) presents a redundant mirror image of Plaintiffs' trademark infringement

claims, and therefore should be dismissed. Defendants ask the Court for a declaration that "[their] use of Plaintiffs' Marks does not and will not infringe Plaintiffs' Marks."[1] C&N Countercl. ¶ 34 at 13; Chadwell Countercl. ¶ 31 at 13. This is a mirror image of Plaintiffs' Third and Fourth Claims for Relief in the Complaint, in which Plaintiffs claim Defendants have infringed Plaintiffs' Marks under the Lanham Act. For instance, Plaintiffs allege that "Defendants are marketing, offering for sale, and selling in commerce counterfeits of Plaintiffs' Books bearing unauthorized reproductions of Plaintiffs' Marks." Am. Compl. ¶ 47 at 10. On the exact flip side, Defendants seek a declaration that "Defendants do not market, offer for sale, or sell in commerce any goods bearing unauthorized reproductions of Plaintiffs' Marks." C&N Countercl. ¶ 31 at 13; Chadwell Countercl. ¶ 28 at 12. Thus, Defendants' First Counterclaim would be resolved upon adjudication of Plaintiffs' Third and Fourth Claims and rendered moot. *See Emma, Inc. v. Microstrategy*, Inc., No. 3-11-0926, 2012 WL 90405, at *1 (M.D. Tenn. Jan. 11, 2012) (dismissing counterclaim for declaratory judgment on trademark non-infringement).[2] To the extent Defendants are also seeking a declaration that (i) they did not engage in the requisite acts of selling, offering for sale, advertising/marketing, or distributing goods under the Lanham Act (*see* 15 U.S.C. § 1114(1), or (ii) the textbooks at issue are "legitimate," these issues

---

[1] In the Complaint and the First Counterclaim, "Plaintiffs' Marks" is defined to refer to those trademarks listed on Exhibit B to the Complaint. Am. Compl. ¶ 19 at 4; C&N Countercl. ¶ 19 at 3; Chadwell Countercl. ¶ 19 at 3.

[2] To the extent Defendants also seek declaratory judgment that their acts do not give rise to the related Lanham Act claims of unfair competition and trademark dilution, and the catch-all category of parallel claims under state law, the disposition of Plaintiffs' trademark infringement claims – which involve the same set of core facts and the same or related legal analyses – will fully resolve those issues as well. *Cf. Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (explaining that the same test is used to determine "whether there has been trademark infringement [and] unfair competition ... the likelihood of confusion between the two marks."). Defendants also include no independent factual allegations in connection with such claims, i.e., other than those alleged in support of their declaratory judgment claim under 15 U.S.C. § 1114(1), i.e., the basis of Plaintiffs' trademark infringement claims.

too will necessarily be resolved upon the adjudication of Plaintiffs' trademark infringement claims.

Defendants' Second Counterclaim (Declaratory Judgment of Non-Infringement of Plaintiffs' Copyrights) also should be dismissed because their request for a declaration that they did not infringe Plaintiffs' copyrights is a mirror image of Plaintiffs' claims that they did infringe. Plaintiffs' infringement claims are based on Defendants' importation and distribution of unauthorized counterfeits of Plaintiffs' works. In their counterclaim, Defendants allege the opposite of this – that they "neither imported unauthorized copies of works embodying Plaintiffs' Copyrights nor distributed" such unauthorized copies. C&N Countercl. ¶ 36 at 13; Chadwell Countercl. ¶ 33 at 13. Plaintiffs also allege that Defendants "indirectly infringed Plaintiffs' copyrights by encouraging, causing, and materially contributing to infringing conduct by others" and further "engaged in, supervised, and/or controlled the importation and/or distribution of" the counterfeits at issue. Am. Compl. ¶¶ 40–41 at 9. Defendants' counterclaim parrots back Plaintiffs' language almost exactly, stating that they have not "encouraged, caused, materially contributed to, knowingly engaged in, supervised, nor controlled the importation and/or distribution" of the counterfeits at issue. C&N Countercl. ¶ 37 at 14; Chadwell Countercl. ¶ 34 at 13. Dismissal is appropriate in such a case where Defendants' counterclaim, as demonstrated above, is redundant of Plaintiffs' copyright infringement claims. *See Malibu Media,* 705 F. App'x. at 405.

2. Defendants Are Not Entitled to Declaratory Relief That Is Not Based on an Actual Controversy.

To the extent Defendants seek declaratory relief concerning their prospective conduct and involvement with "legitimate textbooks" and "textbooks lawfully made and sold abroad" (*see* C&N Countercl. ¶¶ 32, 34, 38, 39 at 13-14; Chadwell Countercl. ¶¶ 29, 31, 35, 36 at 12-14),

such claims also must be dismissed because they are not based on an actual controversy. *See* 28 U.S.C. § 2201(a); *AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir. 2004); *TCI/TKR Cable v. Johnson,* 30 Fed. Appx. 581, 583-84 (6th Cir. 2002). The controversy at issue must be "sufficiently real and immediate, allowing specific and conclusive relief." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002); *Roadtec, Inc. v. Rd. Sci., LLC*, No. 1:10-CV-338, 2013 WL 12123357, at *6 (E.D. Tenn. Feb. 14, 2013) (finding no declaratory judgment jurisdiction because there was no sufficiently real and immediate controversy). "Abstract questions," claims that would result in the "gratuitous[ ] rendering [of] advisory opinions," and claims that "have not matured to a point sufficiently concrete to demand immediate adjudication and thus that may never materialize as actual controversies" are not sufficient to state claims for declaratory relief. *Dow Jones*, 237 F. Supp. 2d at 406. Under these principles, to the extent Defendants seek declaratory judgments absolving them of wrongdoing associated with unspecified, future conduct, their request is without merit. *See, e.g.*,

Further, Defendants' counterclaims relating to "legitimate" or "lawfully made" books should be dismissed because they do not relate to an issue actually in controversy. As stated above, Plaintiffs' allegations only relate to ***counterfeit*** textbooks—as demonstrated by the Complaint in this action and the Plaintiffs' correspondence (which Defendants incorporated in their counterclaims). Defendants appear to be referring to the issues in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 133 S. Ct. 1351 (2013), which Plaintiffs have *not* raised. Plaintiffs make no allegations of infringement or other violations of law by Defendants with respect to "legitimate" books and the subsequent sale of books "lawfully made and sold abroad," and therefore there is no related controversy on which the Court could issue declaratory judgment.

Both because Defendants' declaratory judgment claims would be resolved by the adjudication of Plaintiffs' infringement claims, and they are not based on an actual, justiciable controversy, they should be dismissed with prejudice.

> B. Defendants Do Not Plausibly and Sufficiently Plead the Elements of Their Third Counterclaim (Intentional Interference with Contract).

Defendants' counterclaim for tortious interference with contract fails to state a claim upon which relief can be granted. Under Tennessee law, a claimant must establish the following necessary elements of the claim: "(1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actually breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the breach." *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005) (citation omitted). The complaint "must allege specific facts that, if true, would support each of the seven elements of the tort." *Id.* (granting motion to dismiss for failure to do so).

Defendants' counterclaim fails in multiple respects. First, Defendants have not sufficiently alleged facts to support the existence of a legal contract about which Plaintiffs knew. To survive a motion to dismiss, the specific contract at issue, including the relevant terms, must be clear from the allegations. *Leadsinger, Inc. v. Cole*, No. 05 CIV. 5606 (HBP), 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim because plaintiff failed to allege the relevant terms of the contract at issue and how defendant breached those terms). Here, Defendants summarily allege that a "legal contract for the procurement and successful delivery of the allegedly infringing textbooks existed between Defendant C&N and MBS." C&N Countercl. ¶ 41 at 14; Chadwell Countercl. ¶ 38 at 14. While Defendants attached certain

documents as exhibits to their counterclaims, they conspicuously did not attach a contract between C&N and MBS, nor did they allege what specific contract, if any, forms the basis of their claim.

As to Plaintiffs' knowledge of the unidentified contract, Defendants allege that "Plaintiffs were aware of the contract between C&N and MBS *at least by and through their counsel*." C&N Countercl. ¶ 42 at 14; Chadwell Countercl. ¶ 39 at 14 (emphasis added). However, Defendants' allegations and the correspondence they attach as exhibits do not indicate that Plaintiffs had any knowledge of the alleged contract (through Plaintiffs' counsel or otherwise) prior to the alleged acts of interference. *See, e.g.,* C&N Countercl. ¶¶ 15-17 at 10-11; Chadwell Countercl. ¶¶ 15-17 at 10-11; *see also Sophia's Cure Inc. v. AveXis, Inc.*, No. 2:16-CV-865, 2017 WL 4541449, at *7 (S.D. Ohio Oct. 10, 2017) ("To be liable for tortious interference, a tortfeasor must not only have knowledge of the contract, he must have knowledge of the contract at the time of, or before, the alleged breach.") (citation omitted). Further, as stated in Plaintiffs' Amended Complaint, Plaintiffs affirmatively did not have knowledge of the source of the textbooks at issue when they confirmed to MBS their counterfeit nature and, therefore, could not have known of an existing contract between MBS and the unknown seller, or acted in order to interfere with it. *See* Am. Compl. ¶ 21 at 5. Nothing in Defendants' Counterclaims contradicts, or could contradict, these facts.

Second, Defendants' tortious interference with contract claim fails to establish the breach element. Defendants allege "the contract has been breached because C&N has been unable to complete delivery to, or collect payment from, MBS." C&N Countercl. ¶ 44 at 15; Chadwell Countercl. ¶ 41 at 14. However, the allegation regarding delivery completion is contradicted by Defendants' own allegations, which make clear that Defendants did deliver the books to MBS.

*See* C&N Countercl. ¶ 16 at 11; Chadwell Countercl. ¶ 16 at 11 ("Upon information and belief, Plaintiffs caused to be seized the shipment of textbooks *that had been delivered to MBS*") (emphasis added); *id.* Ex. 3 (letter from White referring to "the books we delivered to MBS"). Rather, the real issue appears to be Defendants' allegation that they did not get paid for the books by MBS. Again, however, this contradicts Defendants' other allegations that C&N "only acts as a logistics, transportation, and facilitation company connecting buyers and sellers" and that Aika was the seller." *See* C&N Countercl. ¶¶ 15, 18 at 10-11; Chadwell Countercl. ¶¶ 15, 18 at 10-11. It also is difficult to square with the invoice Defendants attached to the counterclaims, which identifies Tadley, Inc. (who is not a party) as the payee. *See* Chadwell Countercl. Ex. 1; *see also Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat. Ass'n,* 835 S.W.2d 25, 29 (Tenn. Ct. App. 1992) (in discussing statutory interference claim, stating that "the proper plaintiff is the contracting party injured by the breach, not the breaching party"). Defendants noticeably stop short of affirmatively alleging that MBS breached a contract with C&N by failing to pay C&N, perhaps for these reasons and the additional reason that there can be no breach for failure to pay for counterfeit goods.

Third, Defendants' allegations concerning Plaintiffs' purported interference, malice, and proximate cause are insufficient to state a claim. Defendants allege, without support, that "Plaintiffs specifically intended to prevent the distribution, purchase, and resale of authorized and legitimate textbooks lawfully made abroad within the United States in order to maintain their artificially inflated prices for U.S.-sold textbooks and prevent the existence and dissemination of cheaper textbooks in the U.S. market." C&N Countercl. ¶ 43 at 14; Chadwell Countercl. ¶ 40 at 14. In making this allegation, Defendants do not "plead [] factual content that allows the court to draw the reasonable inference" that Plaintiff engaged in the conduct alleged, with the intent

alleged. *See Mawdsley*, 2013 WL 5754947, at *1. The Complaint in this action, and all of Plaintiffs' correspondence prior to the filing of the action (which Defendants incorporated into their counterclaims), shows that, from Plaintiffs' perspective, counterfeit textbooks– not "legitimate" textbooks, or "textbooks lawfully made abroad" – were, and are, the only issue. Defendants may disagree with Plaintiffs' conclusion that the books are counterfeit, but what matters in this context is *Plaintiffs'* knowledge, intentions, and actions.

Moreover, these same insufficient allegations form the basis of Defendants' conclusory statements in their Third Counterclaim that "Plaintiffs acted with malice" and "Plaintiffs' conduct is the proximate cause of the breach and resulting harm" to Defendants. C&N Countercl. ¶¶ 43, 45 at 14-15; Chadwell Countercl. ¶¶ 40 at 14[3]; *see Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir.2010) (legal conclusions couched as factual allegations are not entitled to a presumption of truth; nor are recitations of the elements of a cause of action sufficient). Malice in the context of tortious interference with contract is "the willful violation of a known right" through "intentional conduct" done "without legal justification." *Whalen v. Bourgeois*, No. E2013-01703-COA-R3-CV, 2014 WL 2949500, at *12 (Tenn. Ct. App. June 27, 2014). Defendants' allegations and the facts that can plausibly be drawn from the pleadings offer no support for the conclusion that Plaintiffs did anything other than notify MBS that the textbooks at issue were counterfeit. Such action is neither a violation of a known right of Defendants nor an act without legal justification. In fact, as discussed below in Section III.D, it is quite the opposite.

---

[3] It should be noted that Chadwell's Third Counterclaim does not allege that Plaintiffs' conduct is the proximate cause of the breach and resulting harm. *See* Chadwell Countercl. ¶¶ 37-42 at 14.

In sum, the Court should reject Defendants' attempt to gloss over, and insufficiently plead, the elements of their tortious interference with contract claim, and dismiss this claim with prejudice because it is clear from the allegations already made that Defendants cannot satisfy its essential elements.

### C. Defendants Do Not Plausibly and Sufficiently Plead the Elements of Their Fourth Counterclaim (Intentional Interference with Business Relationship).

Like Defendants' tortious interference with contract claim, their tortious interference with business relationship counterclaim also fails to sufficiently allege each necessary element and, as such, fails to state a claim upon which relief can be granted. Under Tennessee law, the claimant must allege the following:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the [respondent's] knowledge of that relationship and not a mere awareness of the [claimant's] business dealings with others in general; (3) the [respondent's] intent to cause the breach or termination of the business relationship; (4) the [respondent's] ***improper motive or improper means*** ...; and finally, (5) damages resulting from the tortious interference.

*Stallings v. Latimer Consulting Group, Inc.*, No. 1:12-CV-298, 2013 WL 12100570, at *6 (E.D.Tenn. Nov. 13, 2013), citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis in original).

As discussed in Section III.B above, Defendants do not allege, nor could they, that Plaintiffs were aware of Defendants' business relationship with MBS at the time they identified the books as counterfeit. *See* C&N Countercl. ¶ 48 at 15; Chadwell Countercl. ¶ 39 at 14 (referencing Plaintiffs' being "aware" based on "communication with counsel," which occurred later in time). Also, Defendants' vague allegation that Plaintiffs were aware of Defendants' relationship with MBS because of "prior dealings between C&N and Plaintiffs" is not sufficient to satisfy the knowledge element of the tort. *See id.* The defendant (or in the case the Plaintiffs)

has to be aware of the particular relationship with which it allegedly interfered; a general awareness that parties had dealt with one another will not suffice. *See Stallings v. Latimer Consulting Group, Inc.*, 2013 WL 12100570, at *6; *Pers. Computer Sys., Inc. v. Cent. Knox, Inc.*, No. 3:11-CV-374, 2012 WL 1108245, at *5 (E.D. Tenn. Mar. 30, 2012). Likewise, Plaintiffs' broad allegations that Plaintiffs interfered with their existing relationship with unnamed textbook distributors other than MBS, and "a prospective relationship with other U.S.-based textbook distributors," are clearly too generic to support a tortious interference claim. *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 548 F. Supp. 2d 567, 587 (W.D. Tenn. 2007), aff'd, 357 F. App'x 656 (6th Cir. 2009), citing *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (a claim of tortious interference requires a claim of an existing business relationship with "specific third parties" or a prospective relationship with "an identifiable class of third persons").

Defendants' counterclaim also fails to satisfy the intent and improper motive elements of tortious interference with business relations. As the Tennessee Supreme Court explained, "with regard to improper motive, we require that the plaintiff demonstrate that the defendant's *predominant purpose was to injure the [claimant]*." *Trau-Med of Am., Inc.*, 71 S.W.3d at 701 n.4. (emphasis added). Defendants make no such allegation, nor could they, and what they do allege shows that any supposed injury to Defendants was merely incidental to Plaintiffs' other alleged agendas:

> ***Plaintiffs were motivated to prevent the importation and resale of cheaper, lawful textbooks in order to maintain their anticompetitive prices and economic advantage in the U.S. textbook market***. By preventing others such as C&N and MBS from importing and/or facilitating the importation and resale of cheaper textbooks lawfully made abroad, ***Plaintiffs seek to reduce supply of lawful textbooks in the U.S. market and eliminate the secondary textbook market*** in order to bolster their position as the only source for Plaintiffs' textbooks.

C&N Countercl. ¶ 50 at 15; Chadwell Countercl. ¶ 47 at 15 (emphasis added).

Thus, even assuming Defendants' allegations are true, which they are not, Defendants themselves contend that Plaintiffs were motivated by concern over U.S. book prices and the secondary book market, and not by a principal desire to injure Defendants. Such claims are not sufficient to meet the "improper motive" element of the test for interference with business relationships. *See Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 641 (M.D. Tenn. 2006) (dismissing interference with business relationship claim where respondent "was motivated purely by its own business interests, in the pursuit of which it caused incidental harm to [claimant]."); *Terra Aqua Gabions, Inc. v. Midwest Const. Prods. Corp.*, No. M2005-01753-COA-R3-CV, 2006 WL 2105996, at *4 (Tenn. Ct. App. July 28, 2006) (claim dismissed where claimant "failed to assert any set of facts which would support a determination that [respondent's] predominant motive ... was to injure [plaintiff].").

Furthermore, Defendants fail to allege that Plaintiffs used "improper means" to interfere with their relationship with MBS (or any other textbook distributor). Improper means of interference includes "those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, ... violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, ... and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition." *Shelbyville Hosp. Corp. v. Mosley*, 69 F. Supp. 3d 718, 727 (E.D. Tenn. 2014) (quoting *Trau–Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 n.5 (Tenn. 2002)). Defendants' counterclaim contains no such allegations of "improper means." As explained above, Plaintiffs

informed MBS that certain books were counterfeit (without even knowing Defendants supplied them), and Defendants make no allegation (nor could they) that Plaintiffs reached this determination in bad faith or falsely communicated it to MBS. If Defendants' distribution of counterfeits harmed its business relationships, Plaintiffs are in no way responsible for that result, and Defendants' intentional interference with business relationship claim should be dismissed.

> D. Defendants' Third and Fourth Counterclaims Also Should Be Dismissed Under the Noerr-Pennington Doctrine.

"The Noerr-Pennington doctrine, based on the right to seek redress in the courts, provides that a party 'may not be subjected to liability for its attempt to have its rights protected by the courts unless that attempt is shown to have been a mere 'sham.''" *Beirut Traders Co. v. Neiman Marcus Grp., Inc., Maersk, Inc.*, No. 2:09-CV-11176, 2009 WL 3460674, at *8 (E.D. Mich. Oct. 22, 2009), citing *Melea Ltd. v. Quality Models, Ltd.*, 345 F.Supp.2d 743, 758 (E.D.Mich. 2004).[4] In the intellectual property context, this doctrine bars counterclaims for tortious interference arising from Plaintiffs' acts to protect their intellectual property rights. *Id.* ("plaintiff's pre-lawsuit correspondence, asserting its rights as a trademark holder, could be protected activity under the Noerr-Pennington doctrine"); Melea, 345 F. Supp. 2d at 758; *Sweet St. Desserts, Inc. v. Chudleigh's Ltd.*, 655 F. App'x 103, 111 (3d Cir. 2016) (respondent's sending a cease and desist letter regarding trademark was protected under Noerr-Pennington and could not serve as

---

[4] While the Noerr-Pennington doctrine was initially recognized in the antitrust field, the Sixth Circuit has favorably noted that "the federal courts have by analogy applied it to claims brought under both state and federal laws, including common law claims of tortious interference." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007) (stating that claimant's motion to dismiss may have merit under *Noerr-Pennington*, but declining to decide that issue because it was not claimed); s*ee also Assist-2-Sell, Inc. v. Assist-2-Build, LLC*, No. 1:05-CV-193, 2005 WL 3333276, at *7 (E.D. Tenn. Dec. 6, 2005) (noting that Noerr-Pennington immunity has been extended to tortious interference actions in the Third Circuit and at least one District Court in the Sixth Circuit).

basis for tortious interference claim); *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, No. CIV.A. 02-12102RWZ, 2006 WL 1766434, at *35 (D. Mass. June 28, 2006) (email encouraging recipient to ascertain the legality of the practices in question are protected under Noerr-Pennington).

Plaintiffs' alleged conduct in this case is protected under Noerr-Pennington, and Defendants should be barred from pursuing counterclaims for tortious interference arising therefrom. For instance, in Defendants' Third Counterclaims, Defendants claim that "[b]y alleging C&N engages in counterfeit activities and threatening infringement, by seizing or causing to be seized the April 27, 2017 order to be delivered to MBS, and by initiating this lawsuit, Plaintiffs have engaged in conduct that has prevented C&N from performing its contractual obligations." C&N Countercl. ¶ 44 at 15; Chadwell Countercl. ¶ 41 at 14. However, Plaintiffs' pre-litigation communications about the counterfeit nature of the books and the resulting infringement, as well as the filing of this lawsuit, fit squarely within the Noerr-Pennington doctrine, as demonstrated by the cases cited above. *See, e.g., Melea*, 345 F. Supp. 2d at 758, citing *Pennwalt Corp. v. Zenith Lab.*, 472 F.Supp. 413, 424 (E.D.Mich. 1979). Further, the narrow "sham" exception to Noerr-Pennington does not apply. Again, while Defendants may disagree that the books are counterfeit, Defendants have not alleged, nor could they, that Plaintiffs' conduct to enforce their intellectual property rights was a mere sham tantamount to "illegal, reprehensible practices such as perjury, fraud ... or [conduct that] is so clearly baseless as to amount to abuse of process." *Beirut Traders* 2:09-CV-11176, 2009 WL 3460674, at *8 (E.D. Mich. Oct. 22, 2009), quoting *Audi AG and Volkswagon of America v. D'Amato*, 341 F. Supp. 2d 734, 759 (E.D. Mich. 2004). Thus, as an alternative to dismissal of Defendants'

tortious interference claims for failure to sufficiently allege each essential element thereof, these counterclaims should be dismissed, with prejudice, under the Noerr-Pennington doctrine.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Defendants' counterclaims with prejudice.

Dated: July 16, 2018

Respectfully submitted,

By: s/ Michael A. Johnson
John J. Griffin (#15446)
Michael A. Johnson (#30210)
**KAY GRIFFIN, PLLC**
222 Second Avenue North, Suite 340M
Nashville, TN 37201
Telephone: (615) 742-4800
john.griffin@kaygriffin.com
mjohnson@kaygriffin.com

Matthew J. Oppenheim (admitted *pro hac vice*)
Michele H. Murphy (admitted *pro hac vice*)
**OPPENHEIM & ZEBRAK, LLP**
5225 Wisconsin Ave, NW, Suite 503
Washington, DC 20015
Telephone: (202) 480-2999
matt@oandzlaw.com
michele@oandzlaw.com

*Attorneys for Plaintiffs Pearson Education, Inc. and McGraw-Hill Global Education Holdings, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 16th day of July, 2018, a true and exact copy of the foregoing Memorandum has been served on Defendants C & N Logistics, Inc. and Todd White via ECF and on Defendant Shawn Chadwell via email per agreement of the parties.

                                              s/ Michael A. Johnson
                                              Michael A. Johnson