IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Pearson Education, Inc. and<br>    McGraw-Hill Global Education<br>    Holdings, LLC,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**C & N Logistics, Inc.,<br>    Russell Todd White, and<br>    Shawn Chadwell,**<br><br>    **Defendants.** | Case No. 3:18-cv-00438<br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Barbara D. Holmes<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

### DEFENDANTS C&N LOGISTICS, INC.'S AND RUSSELL TODD WHITE'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Defendants-Counterclaimants C&N Logistics, Inc. and Russell Todd White (C&N"), by and through undersigned counsel, oppose Plaintiffs-Counterclaim Defendants' ("Plaintiffs'") Motion to Dismiss Counterclaims (Dkt. No. 26).[1] C&N's counterclaims for declaratory judgment of non-infringement, tortious interference with a contract, and tortious interference with business relations state plausible claims upon which relief can be granted and serve a useful purpose in

---

[1] On August 13, 2018, Plaintiffs filed a "Supplemental Memorandum in Support of its Motion to Dismiss Defendants' Counterclaims" as Dkt. No. 33. Plaintiffs assert in that briefing that the substance of their original motion to dismiss has not changed. Accordingly, C&N responds herein to Dkt. No. 26 and Dkt. No. 33.

1

consideration of efficiency, fairness, and federalism. C&N's counterclaims meet the required pleading standard of Federal Rule of Civil Procedure 12(b)(6). Accordingly, Plaintiffs' Motion to Dismiss should be denied.

## I. LEGAL STANDARD

Courts consider "all well-pleaded material allegations of the pleadings" as true when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), and all reasonable factual inferences are taken in favor of the plaintiff. *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 960 (M.D. Tenn. 2011). The facts alleged in the complaint "'need to be sufficient to give notice to the defendant as to what claims are alleged'" and to "'render the legal claim plausible, i.e., more than merely possible.'" *ProductiveMD*, 821 F. Supp. 2d at 960 (quoting *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010)); *accord Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Small Smiles Holding Co., LLC*, 781 F. Supp. 2d 597, 600 (M.D. Tenn. 2011) (applying the *Twombly* and *Iqbal* standards to counterclaims). Allegations capable of multiple meanings "must be construed in a light most favorable for the [pleading party]," and a motion for dismissal under Rule 12(b)(6) "may be granted only if the moving party is nevertheless clearly entitled to judgment." *Mayer v. Mylod*, 988 F.2d at 638 (internal citation omitted); *Fritz*, 592 F.3d at 722.[2]

## II. ARGUMENT

### A. C&N's Declaratory Judgment Claims are Well Pleaded.

C&N's declaratory judgment claims raise distinct but related issues that would not be fully resolved by Plaintiffs' claims. They are not redundant mirror-images because they serve the useful

---

[2] While *Fritz* considered a motion to dismiss on the pleadings pursuant to Rule 12(c), the standard applied to motions under Rule 12(c) is the same as the standard applied to motions under Rule 12(b)(6). *Fritz*, 592 F.3d at 722; *ProductiveMD*, 821 F. Supp. 2d at 960.

2

Case 3:18-cv-00438   Document 34   Filed 08/13/18   Page 2 of 15 PageID #: 216

purpose of clarifying whether C&N, as opposed to another party or third party, is liable for the actions alleged by Plaintiffs. C&N's counterclaims also would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding" by enabling a determination of non-infringement even if Plaintiffs' claims are not adjudicated. And they do raise an actual controversy justiciable by this Court.

1. C&N's claims for declaratory judgment serve multiple "useful purposes."

C&N's counterclaims serve two important "useful purposes," which prevent them from being mirror images of Plaintiffs' claims. First, C&N's counterclaims preserve and safeguard the possibility of securing an award of attorney's fees, especially if Plaintiffs withdraw their infringement claims without prejudice under Rule 41(a)(2). Second, Defendant's counterclaims serve to clarify the issues before the Court because Plaintiffs have made allegations that C&N not only denies are infringing, but that C&N denies committing in the first place; and, C&N's counterclaim raises a novel issue that Plaintiffs have expressly renounced.

First, C&N's counterclaims serve a "useful purpose" by preserving C&N's ability to secure an award of attorney's fees in the event that Plaintiffs withdraw their complaint without prejudice under Rule 41(a)(2). When a plaintiff voluntarily dismisses a claim without prejudice, the defendant is not deemed the prevailing party. *McKnight v. 12th & Div. Properties, LLC*, 709 F. Supp. 2d 653, 656 (M.D. Tenn. 2010); *Bridgeport Music, Inc. v. London Music, U.K.*, 345 F. Supp. 2d 836, 842 (M.D. Tenn. 2004), *aff'd,* 226 F. App'x 491 (6th Cir. 2007) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001)); *accord GDM Enterprises, LLC v. Astral Health & Beauty, Inc.*, No. 17-1069, 2018 WL 3453475 at *3 (W.D. Mo. July 17, 2018) (trademark claims) *and Malibu Media, LLC v. Doe*, No. 15-04441, 2016 WL 3383758, at *5 (N.D. Cal. June 20, 2016) (copyright claims). Should Plaintiffs withdraw

3

their trademark or copyright claims without prejudice, C&N would not be a prevailing party and thus would not be able to recoup its attorney's fees.

The possibility that Plaintiffs might withdraw their claims, and thereby limit C&N's ability to seek attorney's fees, is sufficient to establish an independent and useful purpose and afford relief from uncertainty. *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172, 174 (6th Cir. 1942) ("Without the counterclaim the plaintiff might withdraw the suit and leave the rights of the parties in uncertainty."). In *Dominion*, the Sixth Circuit held that "the result was thought to be a wholesome one" if the defendant's counterclaim for declaratory judgment could "prevent [] voluntary withdrawal and keep the plaintiff in court until the respective rights of the parties are determined once and for all." *Dominion*, 126 F.2d at 174. Accordingly, allowing C&N to maintain its declaratory judgment counterclaims preserves C&N's ability to seek attorney's fees. C&N's declaratory judgment counterclaims should not be dismissed as mirror images of Plaintiffs' claims.

Even *Malibu Media* recognized that counterclaims of declaratory judgment of non-infringement provide a defendant "an additional avenue for securing an award of attorney's fees, especially where [the plaintiff could move] to voluntarily dismiss" the complaint without prejudice under Rule 41(a)(2). *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 406-07 (6th Cir. 2017). Although that Court posited that the fee-shifting provision of the Copyright Act made the counterclaim redundant[3] because the Act awards reasonable attorney's fees to the prevailing party "without regard to whether the defendant has asserted a counterclaim," that case is distinguishable here on multiple points. *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 407 (6th Cir. 2017). Primarily, the defendant did not make clear the "useful purpose" his counterclaims entailed, other than to suggest that they were not prejudicial and might deter against future filing of nuisance

---

[3] 17 U.S.C. § 505.

4

copyright suits. *Malibu Media*, 705 F. App'x at 406. Secondarily, the case's analysis incorrectly presumed that attorney's fees would still be available to C&N under the Copyright Act if Plaintiffs withdrew their claims without prejudice. Specifically, as noted, the Court acknowledged that a counterclaim would provide the defendant "an additional avenue for securing an award of attorney's fees, **especially**" where the plaintiff later moved to voluntarily dismiss its complaint without prejudice. *Malibu Media*, 705 Fed. App'x at 407 (emphasis added). But then the Court suggested that the fee-shifting provision of the Copyright Act would "award[] reasonable attorney's fees to the prevailing party in a copyright infringement action without regard to whether the defendant has asserted a counterclaim" – suggesting that it thought a dismissal without prejudice would make the defendant the prevailing party. *Malibu Media*, 705 Fed. App'x at 407. As made clear in *McKnight* and other cases cited above, this is not correct, such that the remedy the Court presumed to be available would not be available for C&N. And, *Malibu Media* did not address or overturn *Dominion*, suggesting that here the "wholesome" result would be to allow C&N to maintain its declaratory judgment counterclaims.[4]

Second, C&N's counterclaims for declaratory judgment seek to clarify that C&N did not import or distribute counterfeit copies of Plaintiffs' books. (Dkt. No. 31, ¶¶ 36, 37.) C&N's counterclaims also seek to clarify that the products C&N is accused of handling are not counterfeit. (Dkt. No. 31, ¶¶ 31, 32, 36, 37.) C&N asserts that the actions it is accused of do not constitute

---

[4] The Middle District of Tennessee distinguished *Dominion* from non-patent cases, in a Fair Labor Standards Act case. *Richmond v. Centurion Exteriors, Inc.*, No. 3:10-0734, 2010 WL 3940592, at *1 (M.D. Tenn. Oct. 6, 2010). But *Dominion* was a trademark case, and the opinion makes clear that it applies in both patent and trademark cases. *See, e.g.*, *Dominion*, 126 F.2d at 172, 175 ("Convinced that the patent (or the trademark) is invalid, he is still hampered and embarrassed by the necessity of avoiding trespass."). *Malibu Media*, on the other hand, was a copyright case. *Malibu Media*, 705 F. App'x at 403. The instant case is a trademark and copyright case, suggesting that *Dominion* still controls at least as to the copyright aspects.

infringement; but even if they do constitute infringement, C&N was not the actor who committed the accused acts. This is different from a standard infringement claim, wherein a party denies that the product was infringing but does not deny doing the accused act.

As an integral part of its counterclaims, C&N asserts that the sale of foreign-produced books is lawful under the first sale doctrine. (Dkt. No. 31, ¶ 38.) This is the precise issue addressed and resolved in the defendant's favor in the *Kirtsaeng* case. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). Plaintiffs contend that the *Kirtsaeng* precedent is inapplicable here. (Dkt. No. 27, p. 8.) Thus, C&N's counterclaim raises an issue not addressed by Plaintiff's claims.

    2. <u>C&N's counterclaims "terminate and afford relief."</u>

C&N's counterclaims also ensure C&N ultimately will receive clarify as to Plaintiffs' allegations of wrongdoing. *See Malibu Media*, 705 Fed. App'x at 405 (noting that another consideration in dismissing a counterclaim is whether it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding"). Intellectual property actions are a direct exception to the "mirror-image" counterclaim rule – a defendant such as C&N can "seek declaratory judgments on issues beyond the scope of the complaint" for the copyright and trademark infringement allegations made against it. *Dominion*, 126 F.2d at 173–74 (distinguishing patent and trademark cases from the mirror-image rule); *Richmond*, 2010 WL 3940592 at *1 (distinguishing intellectual property counterclaims from Fair Labor Standards Act violation counterclaims).

Prohibiting a defendant from making a counterclaim for non-infringement would deny the defendant the right to "terminate and afford relief" for the allegations made against it. Another court explained that intellectual property cases were unique in allowing the defendant to seek declaratory judgment negating the plaintiff's assert claim because, in intellectual property cases, if the Court did not adjudicate "the validity of the underlying intellectual property," it could

6

"leav[e] the defendant in fear of future actions." *Pettrey v. Enter. Title Agency, Inc.*, No. 1:05-CV-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006). So, even if Plaintiffs did not withdraw their claims, this Court could conclude that C&N did not infringe under the current fact pattern without contemplating the validity or enforceability of Plaintiffs' claims. For this reason, an intellectual property defendant such as C&N can make a countervailing claim for non-infringement without being denied its right to a final outcome. Therefore, C&N's counterclaims state a claim upon which relief can be granted and are proper under the standards of Rule 12(b)(6).

       3. <u>C&N's Claims for Declaratory Relief are Based on an Actual Controversy.</u>

C&N's declaratory judgment claims are based on an actual controversy, which Plaintiffs acknowledge: C&N asserts that the sale of foreign-produced books is lawful under the first sale doctrine and that the books are not counterfeit. (Dkt. No. 31, ¶ 13, 37, 38.) This is the precise issue addressed and resolved in the defendant's favor in the *Kirtsaeng* case. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). Plaintiffs contend that the *Kirtsaeng* precedent is inapplicable here. (Dkt. No. 27, p. 8.) C&N's copyright declaratory judgment claim presents an actual case or controversy because Plaintiffs dispute whether C&N's *Kirtsaeng* theory is applicable.

In effect, Plaintiffs implore the Court to make a premature determination that the textbooks must be counterfeit simply because Plaintiffs say so. (Dkt. No. 27, p. 8.) Such predetermination of underlying and critical factual issues is inappropriate for a Motion to Dismiss on grounds of failure to state a claim. *See Volkswagen AG v. Dorling Kindersley Pub., Inc.*, No. 05-72654, 2006 WL 2843926, at *2 (E.D. Mich. Sept. 29, 2006) (Whether alleged infringer was using a counterfeit mark or an original mark is "a question of fact.") C&N alleges with particularity that the textbooks at issue were not counterfeit, were lawfully sold abroad, and provide evidence of the original purchase invoices in support of its claims. (Dkt. No. 32-1.) Conversely, Plaintiffs only support

7

their claim that the textbooks were counterfeit with unsubstantiated allegations, including that the textbooks allegedly distributed by C&N "are different from and often inferior to Plaintiffs' legitimate textbooks." (Dkt. No. 25, ¶ 28.)

For the same reason the controversy at issue is "sufficiently real and immediate" enough to spur Plaintiffs to initiate this lawsuit, it is similarly real and immediate enough to warrant C&N's counterclaims of declaratory non-infringement and limited or invalid applicability. *See generally MedImmune, Inc. v. Genentech*, 549 U.S. 118 (2007) (holding declaratory-judgment claim presented a justiciable case or controversy and reversing dismissal of petitioner's declaratory judgment claims for invalidity, unenforceability, and infringement). Plaintiffs' allegation that its textbooks transported by C&N are counterfeit does not make them counterfeit, and Plaintiffs seem to suggest that since Plaintiffs did not plead particular facts, then C&N cannot plead contrary facts. Plaintiffs should not be able to cut off C&N's counterclaims by suggesting that C&N can only base its counterclaims on Plaintiffs' facts. By suggesting that C&N's counterclaims are improper because they do not have a basis in Plaintiffs' facts, Plaintiffs are circumventing settled case law that C&N's factual allegations are accepted as true for purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal citations omitted).

The parties are asserting diverging claims, and there is an actual controversy at issue: Plaintiffs' denial of facts asserted by C&N only serves to underscore this point. (Dkt. No. 27, pgs. 7-8.) The motion to dismiss C&N's claims for declaratory judgment should be denied.

8

## B. C&N Has Plausibly and Sufficiently Pleaded the Elements of Tortious Interference with a Contract.

C&N has alleged facts sufficient to support the existence of its contract with MBS and Plaintiffs' knowing interference with the contract. Tennessee does not require a written agreement for the purchase of services. *See* T.C.A. §§ 29-2-101, 47-2-201 (Statute of frauds). C&N alleged with specificity that MBS placed an order for 767 copies of fourteen different textbooks as identified in Invoice Number 04102017a. (Dkt. No. 31, ¶¶ 12, 41; Dkt. No. 31-1, pg. 6.) The plain language of the invoice shows it is between C&N Logistics and MBS Textbook Exchange, and that such invoice is a memorialization of the contractual obligations between C&N Logistics and MBS to deliver the textbooks at issue.[5] *See generally Song & Song Corp. v. Fine Art Const. Co., LLC*, No. W2011-01708, 2012 WL 2146313, at *10 (Tenn. Ct. App. June 14, 2012) (invoice of work performed presented evidence of oral contract absent a signed writing). C&N also alleged Plaintiffs' knowledge of the contract between C&N and MBS. (Dkt. No. 31, ¶¶ 14, 15, 16, 41; Dkt. No. 31-1, pg. 6.) These allegations suggest that MBS knew who provided the books, MBS was working with the publishers and the books had been seized or held, Plaintiffs were in communication with MBS, and Plaintiffs caused MBS to sieve or hold the books; Plaintiffs' amended complaint supports this determination. (*See* Dkt. No. 25, p. 5: "When Defendants distributed the books to the Distributor, they did so in the name "C & N Logistics" and directed that a payment processing company contracted by C & N receive payment.")

---

[5] C&N is confused by the inference Plaintiffs appear to make with regard to Tadley. Invoice Number 04102017a identifies Tadley, Inc. as the payee and then states in all caps and in bold, "TADLEY, INC. IS A PAYMENTS PROCESSING COMPANY CONTRACTED BY C&N TO RECEIVE PAYMENTS." (Dkt. No. 32-1, p. 6.) Tadley is no more an indispensable party to C&N's counterclaims than Visa, MasterCard, or any other payment processing company would be indispensable parties to every breach of contract claim for failure to pay. Because MBS failed to pay C&N as a result of Plaintiffs' false claims of counterfeit, C&N is the aggrieved party with standing.

9

Moreover, the pleadings demonstrate Plaintiffs' knowledge of C&N's identity at least as of December 15, 2017, when Plaintiffs' counsel wrote a letter to C&N alleging infringement. (Dkt. No. 31, ¶ 7; Dkt. No. 32-2.) As of December 20, 2017, Plaintiffs knew or had constructive knowledge that a contract existed between C&N and MBS when Mr. White stated that MBS had "an outstanding balance they need to get paid." (Dkt. No. 31, ¶ 18; Dkt. No. 32-2.) Plaintiffs' counsel responded alleging Defendant C&N was the supplier. (Dkt. No. 31, ¶ 18; Dkt. No. 32-2.) Between January 11, 2018 and January 16, 2018, C&N provided Plaintiffs with evidence that the textbooks were not counterfeits, including the identity of the supplier of the accused books. (Dkt. No. 31, ¶¶. 19-25.) These allegations show that C&N has asserted that Plaintiffs' actions were willful and without legal justification. *Whalen v. Bourgeois*, No. E2013-0173, 2014 WL 2949500, at *12 (Tenn. Ct. App. June 27, 2014) ("Interference is without justification if it 'is done for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense.'") (internal quotations omitted). For purposes of the motion to dismiss, C&N's factual assertions should be accepted. *Iqbal*, 556 U.S. at 678. Thus, Plaintiffs were informed that the textbooks were lawfully purchased abroad, Plaintiffs accordingly had knowledge that the textbooks were not counterfeit, Plaintiffs nevertheless continued to claim counterfeit status, and Plaintiffs had significant financial motivation to claim that the legitimately imported textbooks were counterfeits. (Dkt. No. 31, ¶¶ 14, 21, 32, 38, 39.)

C&N has properly pleaded that there was a legal contract for the delivery of imported textbooks; that Plaintiffs knew of that contract; that Plaintiffs intended to induce a breach of the contract by interrupting the delivery and sale of the textbooks; that Plaintiffs acted with malice; that the contract was actually breached by MBS; that Plaintiffs' acts in seizing the textbooks and falsely declaring them counterfeit were the proximate cause of the breach; and that C&N suffered

damages resulting from the breach. *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005) (listing elements of Intentional Interference with a Contract). C&N has alleged enough to state a claim.

### C. C&N has Plausibly and Sufficiently Pleaded the Elements of Their Tortious Claim for Intentional Interference with Business Relationship.

C&N alleged facts sufficient to support its claim for tortious interference with a business relationship because Plaintiffs (1) were aware of C&N's specific business relationship with MBS involving the distribution of the alleged textbooks and (2) maintained claims that the textbooks were counterfeit at least as of December 2017 and January 2018. (Dkt. No. 31, ¶¶ 14, 15, 16, 18, 19, 21, 22; Dkt. Nos. 32-3 and 32-4.) Plaintiffs intended to disrupt C&N's lawful business by preventing the transportation and delivery of cheaper, lawful textbooks and chill the competitive secondary textbook market. (Dkt. No. 31, ¶¶ 43, 50.) That C&N has also identified the broad purpose behind Plaintiffs' motivations in disrupting C&N's business does not change the fact that Plaintiffs' improper motive and intent was to prevent "C&N and MBS from importing and/or facilitating the importation and resale of cheaper textbooks lawfully made abroad." (Dkt. No. 31, ¶ 50.) *Cf. Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W. 3d 691, 701 (Tenn. 2002) (holding that a cause of action for tortious interference with a business relationship existed where plaintiff had stated facts sufficient to support that "Allstate's predominant motive was to drive Trau-Med out of business <u>for the sole purpose of limiting health care access to indigent claimants to 'control and limit [Allstate's] claims expenses.'</u>") (emphasis added); *Terra Aqua Gabions, Inc. v. Midwest Const. Products Corp.*, No. M2005-01753, 2006 WL 2105996, at *4 (Tenn. Ct. App. July 28, 2006) (Plaintiff Terra Aqua had no cause of action for tortious interference with a business relationship existed because it had not alleged that defendant had either "misrepresented the quality of Terra Aqua's product" or "directed any act at Terra Aqua."). Because C&N has alleged that

11

Plaintiffs have both misrepresented the legitimate nature of the textbooks delivered and have directed these actions at C&N specifically by seizing this specific delivery, C&N has properly pleaded Plaintiff's improper motive.

> **D. Plaintiffs Cannot Claim Tort Immunity Under the Noerr-Pennington Doctrine for Non-Litigation Activities and Sham Claims.**

C&N's claims should survive despite *Noerr-Pennington* for two reasons. First, the *Noerr-Pennington* doctrine only applies to "objectively reasonable effort[s] to litigate." *Professional Real Estate Investigators, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 57–58 (1993) (recognizing *Noerr*'s application to "the approach of citizens . . . to administrative agencies . . . and to courts, the third branch of Government.") (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 611 (1972)). It does not apply to "non-judicial, non-petitioning statement[s]" or activities. *See S3 Graphics Co., Ltd. v. ATI Technologies, ULC*, No. 11-1298 2015 WL 7307241, at *15 (D. Del. Oct. 21, 2015) ("Defendants' conduct was not 'petitioning the government' but was instead 'private commercial activity, no element of which involved seeking to procure the passage or enforcement of laws.'") (citing *Litton Sys., Inc. v. Am. Telephone & Telegraph Co.*, 700 F.2d 785, 807 (2d Cir. 1983). Notably, C&N does not claim that this lawsuit or the letters sent by Plaintiffs' counsel to C&N constitute the intentional interference between MBS and C&N. Rather, C&N alleges that the physical seizure of the textbooks and intentional misrepresentation of the nature of the textbooks to MBS constitutes the unlawful acts. (Dkt. No. 31, ¶¶ 42, 43, 44, 48, 49, 50.) Plaintiffs' actions in seizing the textbooks and alleging to MBS that the textbooks were counterfeit do not constitute a government-petitioning or judicial activity protected by the *Noerr-Pennington* doctrine.

Second, the *Noerr-Pennington* doctrine does not apply to "sham" proceedings. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991). Under the sham exception,

"activity ostensibly directed toward influencing governmental action does not qualify for *Noerr* immunity if it is a mere sham to cover an . . . attempt to interfere directly with the business relationships of a competitor. . . . In other words, the plaintiff must have brought baseless claims in an attempt to thwart competition (*i.e.* in bad faith)." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) (internal quotations omitted). C&N has pleaded with particularity that Plaintiffs' actions are (1) baseless, as the textbooks at issue are demonstrably lawful products, and (2) a bad faith attempt to thwart competition by C&N. (Dkt. No. 31, ¶¶ 43, 50.)

When considering a motion to dismiss, "all that is required is that the complaint allege facts, which, if proven, show that the defendant is not entitled to *Noerr-Pennington* immunity under the sham litigation exception." *Jarrow Formulas, Inc. v. International Nutrition Co.*, 175 F.Supp.2d 296, 310-11 (D. Conn. Nov. 16, 2001). Consequently, determination of *Noerr-Pennington* immunity and dismissal of C&N's counterclaims prior to related discovery regarding the legitimacy of the textbooks and Plaintiffs' intent is improper. *See S3 Graphics*, 2014 WL 573358, at *3 (refusing to dismiss plaintiff's state law tort claims including unfair competition pursuant to Rule 12(b)(6) and to conclude C&N's *Noerr-Pennington* immunity prior to discovery). C&N has alleged sufficient facts to overcome the *Noerr-Pennington* doctrine.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss C&N's Counterclaims should be denied.

Respectfully Submitted,

/s/ Ryan D. Levy
John F. Triggs (BPR 26718)
Ryan D. Levy (BPR 24568)
Scott M. Douglass (BPR 31097)

13

Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, Tennessee 37203
(615) 242-2400
jft@iplawgroup.com
rdl@iplawgroup.com
smd@iplawgroup.com

*Attorneys for Defendants C&N Logistics, Inc. and Russell Todd White*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the foregoing document DEFENDANTS C&N LOGISTICS, INC.'S AND RUSSELL TODD WHITE'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS has been served on all parties of record by electronic filing via CM/ECF, on August 13, 2018, including the following:

John J. Griffin, Jr.
Michael A. Johnson
KAY GRIFFIN, PLLC
222 Second Avenue North, Suite 340M
Nashville, Tennessee 37201
john.griffin@kaygriffin.com
mjohnson@kaygriffin.com

Matthew J. Oppenheim
Michele H. Murphy
OPPENHEIM & ZEBRAK, LLP
5225 Wisconsin Ave, NW, Suite 503
Washington, DC 20015
matt@oandzlaw.com
michele@oandzlaw.com

*Attorneys for Plaintiffs Pearson Education, Inc. and McGraw-Hill Global Education Holdings, LLC.*

And via email to:

Shawn Chadwell
schadwell@mac.com

                                          /s/ Ryan D. Levy
                                          Ryan D. Levy