IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PEARSON EDUCATION, INC. and<br>MCGRAW-HILL GLOBAL EDUCATION<br>HOLDINGS, LLC. | )<br>)<br>) | |
| Plaintiffs, | )<br>) | NO. 3:18-cv-00438<br>JUDGE RICHARDSON |
| v. | )<br>) | |
| C&N LOGISTICS, INC., RUSSELL<br>TODD WHITE, and SHAWN<br>CHADWELL | )<br>)<br>) | |
| Defendants. | )<br>) | |

## **MEMORANDUM OPINION**

Before the Court is Plaintiffs' Pearson Education, Inc. ("Pearson") and McGraw-Hill Global Education Holdings, LLC ("MHE") Motion to Dismiss Defendants' Counterclaims (Doc. No. 26).[1] Defendants have responded in opposition (Doc. Nos. 34, 35),[2] and Plaintiffs have replied (Doc. No. 37). As explained below, the motion is granted.

---

[1] The Court notes that Plaintiffs filed a Supplemental Memorandum in Support of its Motion to Dismiss. (Doc. No. 33.) In their supplemental memorandum, Plaintiffs merely state that they filed an amended complaint (Doc. No. 25), and Defendants C&N Logistics and Russell Todd White answered the amended complaint and re-filed the same counterclaims against Plaintiffs. Plaintiffs request that the Court consider their Motion to Dismiss and Memorandum in Support (Doc. Nos. 26, 27) to be their response to Defendants' re-filed counterclaims. Given that the counterclaims have not substantively changed, the Court grants Plaintiffs' request. The Court notes that pro se Defendant Shawn Chadwell did not file an answer and counterclaims to Plaintiffs' amended complaint until November 16, 2018. Defendant Chadwell's counterclaims do not appear to be substantively different from his original counterclaims. Accordingly, the Court construes Plaintiffs' motion as applying to Defendant Chadwell's new counterclaims.

[2] In Defendant Chadwell's opposition to Plaintiffs' motion, he states that "it would appear" that he has not received the documents the parties reference. (Doc. No. 35 at 2.) According to the filings in this case, the documents essential to addressing the pending motion—the amended complaint, Plaintiffs' motion and memorandum in support, Plaintiffs' supplemental memorandum in support, and Defendants C&N and White's opposition to Plaintiffs' motion—were served on Defendant

1

## FACTUAL BACKGROUND

Plaintiffs bring this action against Defendants C&N Logistics, Inc. ("C&N"), Russell Todd White, and Shawn Chadwell for copyright and trademark infringement. (Doc. No. 25.) Plaintiffs are leading education publishers, who develop, market, and sell textbooks. (Id. ¶ 2.) Plaintiffs claim they are the owners or exclusive licensees of the copyrights and trademarks that appear on the textbooks at issue. (Id. ¶¶ 18-19.)

Defendants have filed counterclaims against Plaintiffs. (Doc. Nos. 43, 31.)[3] The counterclaims allege the following. C&N is in the logistics and freight transportation business and acts only as a logistics, transportation, and facilitation company connecting buyers with suppliers. (Doc. No. 43 ¶¶ 9, 18; Doc. No. 31 ¶¶ 9, 18.) MBS Textbook Exchange, Inc. ("MBS"), a wholesale textbook distributor, is one of C&N's clients. (Doc. No. 43 ¶ 10; Doc. No. 31 ¶ 10.) On April 10, 2017, MBS placed an order for the importation and delivery of 767 copies of fourteen different textbooks, including one published by MHE and thirteen published by Pearson. (Doc. No. 43 ¶ 12; Doc. No. 31 ¶ 12.) C&N confirmed MBS's order with Aika and visually checked the books

---

Chadwell by e-mail per an agreement between the parties. (See Doc. No. 25 at 13; Doc. No. 26 at 3; Doc. No. 27 at 19; Doc. No. 33 at 3; Doc. No. 34 at 15.) However, given Defendant Chadwell's claim, the Court previously held that it would not be fair to require Defendant Chadwell to "just do [his] best" and respond to the Plaintiffs' motion to dismiss his counterclaims without the relevant documents. (Doc. No. 35 at 2; Doc. No. 39 at 1.) The Court, therefore, directed the Clerk of Court to immediately serve Defendant Chadwell all documents filed in the case, except those filed by Defendant Chadwell. (Doc. No. 39 at 1-2.) The Court stated that Defendant Chadwell may file a supplemental memorandum in opposition to Plaintiffs' motion by October 17, 2018. (Id. at 2.) That deadline has now passed, and Defendant Chadwell has failed to file a supplemental memorandum. Accordingly, the Court addresses the arguments from his original opposition (Doc. No. 35) herein.

[3] Defendant Chadwell's counterclaims make almost the same allegations as Defendants C&N Logistics and Russell Todd White's counterclaims. The Court also notes that the paragraph citations herein for Document Numbers 31 and 43 refer to the counterclaims and not the answer contained in the same document.

prior to distribution to MBS to determine their authenticity.[4]  (Doc. No. 43 ¶ 13; Doc. No. 31 ¶ 13.)  C&N determined that the books showed no signs of tampering, illegitimacy, or counterfeit.  (Doc. No. 43 ¶ 13; Doc. No. 31 ¶ 13.)

MBS informed C&N that the shipment had been held due to its size and an issue with the textbooks' publishers.  (Doc. No. 43 ¶ 15; Doc. No. 31 ¶ 15.)  Plaintiffs then caused the textbooks that had been delivered to MBS to be seized.  (Doc. No. 43 ¶ 16; Doc. No. 31 ¶ 16.)

On December 15, 2017, Defendant White, C&N's owner and president, received an e-mail from Matthew Oppenheim, an attorney who claimed to represent Plaintiffs, which alleged C&N distributed a pallet of counterfeit textbooks to MBS and demanded C&N to provide, inter alia, the identity of the book's suppliers.  (Doc. No. 43 ¶ 17; Doc. No. 31 ¶ 17; Doc. No. 25 ¶ 11.)  Defendant White replied around January 11, 2018 to confirm that the books were authentic and originated from Plaintiffs.  (Doc. No. 43 ¶ 18; Doc. No. 31 ¶ 18.)  On January 15, 2018, Oppenheim responded to Defendant White's e-mail and asserted that the allegedly infringing textbooks sold by C&N to MBS were counterfeit and again demanded the book supplier's identity.  (Doc. No. 43 ¶ 20; Doc. No. 31 ¶ 20.)  On that same date, Defendant White contacted Aika regarding the issue, and Aika authorized Defendant White to provide Oppenheim with its contact information.  (Doc. No. 43 ¶ 21; Doc. No. 31 ¶ 21.)  On January 16, 2018, Defendant White sent Oppenheim an e-mail with Aika's identity and contact information.  (Doc. No. 43 ¶ 22; Doc. No. 31 ¶ 22.)

Based on these allegations, Defendants allege the following counterclaims: (1) Declaratory Judgment of Noninfringement of Plaintiffs' Marks; (2) Declaratory Judgment of Noninfringement

---

[4] The Court here refers to Aika without any prior introduction to, or context for understanding the role of, Aika because this is, oddly, exactly what Defendants did in Paragraph 13 of their counterclaims.  The counterclaims do not provide any information regarding Aika's business or other characteristics beyond stating that Aika is located in Amman, Jordan. (Doc. No. 22-4 at 2.)

of Plaintiffs' Copyrights; (3) Intentional Interference with Contract; and (4) Intentional Interference with Business Relationship. (Doc. No. 43 ¶¶ 27-47; Doc. No. 31 ¶¶ 30-50.) Plaintiffs now move to dismiss all of these counterclaims.

## LEGAL STANDARD

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint, or in this case the counterclaim, as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. Id. at 678; Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. Iqbal, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of Iqbal and its predecessor and complementary case, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." Iqbal, 556 U.S. at 680. Identifying and setting aside such

allegations is crucial because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. Id. at 681. The question is whether the remaining factual allegations plausibly suggest an entitlement to relief. Id. If not, the pleading fails to meet the standard of Rule 8 and thus must be dismissed pursuant to Rule 12(b)(6). Id. at 683.

## DISCUSSION

### A. First and Second Counterclaims, for Declaratory Judgment

#### 1. Whether Defendants' Claims are Redundant of Plaintiffs' Claims or Otherwise Fail to State a Claim Upon Which Relief Can Be Granted

Plaintiffs move to dismiss the First and Second Counterclaims against them because they are redundant, mirror-images of their claims or otherwise fail to state a claim upon which relief can be granted. "A court should dismiss a redundant counterclaim when it is clear . . . a complete identity of factual and legal issues between the complaint and the counterclaim [exists]." Emma, Inc. v. Microstrategy, Inc., No. 3-11-0926, 2012 WL 90405, at *1 (M.D. Tenn. Jan. 11, 2012); see, e.g., Malibu Media, LLC v. Ricupero, 705 F. App'x 402, 406-07 (6th Cir. 2017) (affirming district court's dismissal of declaratory judgment counterclaim for non-infringement of plaintiff's copyright where the resolution of plaintiff's infringement claim would render the counterclaim moot); Mawdsley v. Kirkland's, Inc., No. 3-13-0462, 2013 WL 5754947, at *2 (M.D. Tenn. Oct. 23, 2013) (dismissing defendant's counterclaim seeking a declaratory judgment for non-infringement because it was the mirror image of the plaintiff's claim for copyright infringement); Emma, 2012 WL 90405, at *1 (dismissing defendant's counterclaim for declaratory judgment that defendant is not infringing plaintiff's mark because the adjudication of plaintiff's claims would render it moot).

The non-infringement claims in Defendants' First Counterclaim are redundant of Plaintiffs' trademark infringement claims. Defendants claim they are "entitled to a declaration that its use of Plaintiffs' Marks does not and will not infringe Plaintiffs' Marks or otherwise violate state or federal statutory or common law." (Doc. No. 43 ¶ 31; Doc. No. 31 ¶ 34.) This is a mirror image of Plaintiffs' third and fourth claims in the amended complaint, in which Plaintiffs assert Defendants have infringed Plaintiffs' marks under the Lanham Act. Specifically, Plaintiffs allege that without their authorization, "Defendants are marketing, offering for sale, and selling in commerce counterfeits of Plaintiffs' Books bearing unauthorized reproductions of Plaintiffs' Marks." (Doc. No. 25 ¶ 47.) Defendants' counterclaim alleges just the opposite. (See Doc. No. 43 ¶ 28; Doc. No. 31 ¶ 31) ("Defendants <u>do not</u> market, offer for sale, or sell in commerce any goods bearing unauthorized reproductions of Plaintiffs' Marks.") (emphasis added). In addition, Plaintiffs allege that Defendants' "uses of Plaintiffs marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants' goods." (Doc. No. 25 ¶ 48.) Defendants again allege just the opposite—that their use of "Plaintiffs' Marks <u>does not</u> and <u>will not</u> cause confusion or mistake or deceive the public in violation of the Lanham Act." (Doc. No. 43 ¶ 30; Doc. No. 31 ¶ 33.) (emphasis added). Therefore, a complete identity of factual and legal issues between the complaint and the counterclaim allegations related to trademark infringement exists. Accordingly, the declaratory judgment claim related to trademark infringement will be dismissed with prejudice.

Defendants' First Counterclaim also alleges that Defendants' use of Plaintiffs' marks does not constitute unfair competition, false designation of origin, or trademark dilution in violation of the Lanham Act or any related state law claims. It is unclear from Defendants' counterclaims whether they also seek a declaratory judgment that their acts do not give rise to violations of these

6

claims, and Defendants do not address this issue in their response. To the extent Defendants' seek a declaratory judgment on these issues, these claims also will be dismissed with prejudice for the reasons discussed directly below.

Defendants' declaratory judgment claim related to unfair competition and false designation of origin will be dismissed because these claims involve the same factual and legal issues as Plaintiffs' trademark infringement claim. See Audi AG v. D'Amato, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks."). Defendants' declaratory judgment claim related to trademark dilution will be dismissed because Defendants have failed to plausibly allege it. A dilution claim involves the issues of whether a mark is famous and distinctive. See Kellogg Co. v. Toucan Golf, Inc., 337 F.3d 616, 628 (6th Cir. 2003). None of Defendants' factual allegations address this issue, and it is axiomatic that conclusory allegations cannot survive a motion to dismiss. See Iqbal, 556 U.S. at 681. Furthermore, all parallel claims under state law also will be dismissed for the same reasons the federal claims will be dismissed.

The non-infringement claims in Defendants' Second Counterclaim are redundant of Plaintiffs' copyright infringement claims and therefore also will be dismissed. Defendants claim that they are "entitled to a declaration that [they are] not infringing nor will infringe Plaintiffs' Copyrights or otherwise violate federal copyright law with respect to [their] facilitation of purchasing and importation of Plaintiffs' textbooks lawfully made and sold abroad." (Doc. No. 43 ¶ 36; Doc. No. 31 ¶ 39.) This is a mirror image of Plaintiffs' first and second claims in the amended complaint, in which Plaintiffs assert Defendants have infringed Plaintiffs' copyrights under the Copyright Act. Specifically, Plaintiffs copyright infringement claims are based on

7

Defendants' importation and distribution of unauthorized counterfeits of Plaintiffs' textbooks. (See Doc. No. 25 ¶ 33). Defendants allege just the opposite in their counterclaim. (See Doc. No. 43 ¶ 33; Doc. No. 31 ¶ 36) ("Defendants have neither imported unauthorized copies of works embodying Plaintiffs' Copyrights nor distributed unauthorized copies to the public by sale or other transfer of ownership.") Plaintiffs also allege that Defendants "indirectly infringed Plaintiffs' copyrights by encouraging, causing, and materially contributing to infringing conduct by others" and further "engaged in, supervised, and/or controlled the importation and/or distribution of" the counterfeits at issue. (Doc. No. 25 ¶¶ 40-41.) Defendants' counterclaim, again, alleges the opposite—that they have not "encouraged, caused, materially contributed to, knowingly engaged in, supervised, nor controlled the importation and/or distribution" of the counterfeits at issue. (See Doc. No. 43 ¶ 34; Doc. No. 31 ¶ 37.) Accordingly, because identity of factual and legal issues between the complaint and the counterclaim allegations related to copyright infringement exists, the declaratory judgment claim related to copyright infringement will be dismissed with prejudice.

Even if, assuming arguendo, the mirror-image rule does not apply, the Court will still dismiss the First and Second Counterclaims based on its discretion under the Declaratory Judgment Act. The Declaratory Judgment Act states that in a case of actual controversy within its jurisdiction, a court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). This is true "even when the suit otherwise satisfies subject matter jurisdictional prerequisites," which as discussed herein, has not occurred here. Id.; see State of Mich. v. Meese, 853 F.2d 395, 397 (6th Cir. 1988) (holding that if there is no case or controversy, then the court lacks subject matter jurisdiction). The Sixth Circuit has adopted a five-factor test to

8

determine when a district court should exercise jurisdiction over a declaratory judgment: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. AmSouth Bank v. Dale, 386 F.3d 763, 785 (6th Cir. 2004). The Court finds that these factors, particularly the presence of the first and second, weigh in favor of dismissing the First and Second Counterclaims. The judgment would not settle a controversy that is not already at issue and would not serve a useful purpose in clarifying the legal relations at issue. "[T]his is not a situation in which a declaratory plaintiff will suffer injury unless legal relations are clarified; the [Defendants] do not currently 'act at their peril.'" Id. at 786. Accordingly, the Court will dismiss the First and Second Counterclaims.

Defendants present three arguments against the Court's dismissal of its First and Second Counterclaims, none of which are persuasive. First, they argue that their counterclaims serve the useful purpose of preserving an award of attorney's fees if Plaintiffs withdraw their complaint without prejudice. However, the Sixth Circuit and another court in this district have rejected this argument. See Malibu Media, LLC v. Ricupero, 705 F. App'x 402, 407 (6th Cir. 2017) (rejecting argument that defendant's counterclaim was not redundant of plaintiff's claim because it provided an additional avenue for securing an award of attorney's fees); Mawdsley v. Kirkland's, Inc., No. 3-13-0462, 2013 WL 5754947, at *2 (M.D. Tenn. Oct. 23, 2013) (dismissing defendant's declaratory judgment claim for non-infringement of plaintiff's copyright and stating that 17 U.S.C. § 505 allows an attorney's fee award to "the prevailing party, whether or not a counterclaim is

9

asserted . . . If Plaintiff's claim for infringement is denied, Defendant could be the prevailing party without having asserted a counterclaim. Moreover, Defendant's speculation that Plaintiff could withdraw her claim to avoid a finding of non-infringement is just that, speculation"). This Court does the same.

Second, Defendants argue that their counterclaims differ from the usual infringement claim—where the parties solely dispute whether the product was infringing—because they deny both that the product was infringing and committing the infringing acts. (Doc. No. 34 at 5-6.) However, as Plaintiffs aptly assert, infringement claims necessarily address whether the defendant engaged in the infringing act and therefore Plaintiffs' claims will resolve this issue. See NCR Corp. v. Korala Assocs., Ltd., 512 F.3d 807, 814 (6th Cir. 2008).

Third, Defendants argue that the holding in Dominion Elec. Mfg. Co v. Edwin L. Wiegand Co., 126 F.2d 172 (6th Cir. 1942) is controlling here and sets forth "a direct exception to the 'mirror-image' counterclaim rule" for "[i]ntellectual property claims." (Doc. No. 34 at 6.)[5] In Dominion, the Sixth Circuit reversed the district court's dismissal of the defendant's counterclaim for a declaratory judgment that the trademark at issue be held invalid or restricted and non-infringed, even though Plaintiff's suit appeared to assert the opposite. Id. at 173. The Sixth Circuit stated, inter alia, that in patent or trademark infringement suits, courts may find the defendant innocent of infringement and thus "deem[ ] it unnecessary to determine issues of title, validity, or the scope of the patent claims." Id. at 174. While "[o]ne defendant exonerated of infringement may be content with such adjudication—another may not . . . [Such a defendant's] activities are still circumscribed by the monopoly based upon the patent grant." Id. at 174-75. The latter kind

---

[5] The Court notes that although Defendants cite Dominion to support this assertion, the pages Defendants cite from Dominion do not support the proposition that there is a direct exception to the mirror-image counterclaim rule for all intellectual property claims, including copyright claims.

10

of defendant may wish "to be freed from the restrictions of an invalid patent or trademark, and he represents not only himself, but, in a sense, also the public which is likewise excluded from the field of monopoly. The Declaratory Judgment Act furnishes him with the means of escape." Id. at 175. However, the facts in Dominion are distinguishable from the present case because the counterclaims in Dominion specifically raised the issue of title, validity, and scope, whereas the counterclaims here do not. Furthermore, for its finding that the district court abused its discretion in dismissing the counterclaim for declaratory judgment, Dominion relied on the fact that it was "impossible to determine, except by inference, the grounds upon which the counterclaim for declaratory judgment was dismissed." Id. at 175. By contrast, here the Court has outlined above its reasons for dismissal.

**2. Whether Defendants' Counterclaims Seek in Part Declaratory Relief Not Based on an Actual Controversy**

In addition to seeking dismissal of the First and Second Counterclaims in their entirety, Plaintiffs alternatively argue for partial dismissal of these counterclaims, i.e., dismissal to the extent that these counterclaims seek declaratory relief concerning Defendants' prospective conduct. (Doc. No. 27 at 7-8.) Specifically, Defendants First and Second Counterclaims seek a declaratory judgment stating that its use of Plaintiffs' marks "does not and will not" infringe Plaintiffs' marks (Doc. No. 43 ¶ 31; Doc. No. 31 ¶ 34) (emphasis added), and that "it is not infringing nor will infringe Plaintiffs' Copyrights" (Doc. No. 43 ¶ 36; Doc. No. 31 ¶ 39) (emphasis added). The Declaratory Judgment Act requires an "actual controversy." 28 U.S.C. § 2201(a). To determine whether there is an actual controversy, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). The

answer in this case is no. Defendants' claims for a declaratory judgment absolving them of wrongdoing associated with unspecified future conduct are not a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. There are no allegations in the counterclaims that Defendants continue to import and deliver textbooks published by Plaintiffs. Defendants have not presented an argument against this conclusion. These claims, therefore, are dismissed with prejudice.

Plaintiffs also move to dismiss the first and second counterclaim because the allegations of Defendants' involvement with "legitimate textbooks" and "textbooks lawfully made and sold abroad" are not based on an actual controversy. (Doc. No. 27 at 8-9.) According to the parties, these allegations relate to the first sale doctrine, which the Supreme Court extended to copyrighted works lawfully manufactured outside the United States in Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519 (2013). The first sale doctrine is a defense to infringement. See Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc., 474 F.3d 365, 369 (6th Cir. 2007) ("It is true that trademark law contains a 'first sale' exception that provides a defense to claims of infringement."); Raymond J. Dowd, Copyright Litigation Handbook § 13:31 (2d ed. 2017) (section titled "Defenses commonly arising in copyright litigation—First sale doctrine"); Kinney & Lange, P.A., Intell. Prop. L. Bus. Law. § 8:25 (2017-2018 ed.) ("The first sale doctrine may be asserted as a defense to infringement of the exclusive distribution right."). Therefore, Plaintiffs' infringement claims will necessarily resolve the first sale doctrine issue, if Defendants choose to raise it as a defense. Accordingly, these allegations will be dismissed with prejudice based on the previously discussed

authority related to mirror-image counterclaims. In light of the foregoing, the First and Second Counterclaims will be dismissed with prejudice.[6]

### B. Third Counterclaim, for Intentional Interference with Contract

To establish a claim for intentional interference with contract under Tennessee law, a plaintiff must establish that: (1) a legal contract existed; (2) the wrongdoer knew of the contract's existence; (3) the wrongdoer intended to induce a breach of that contract; (4) the wrongdoer acted maliciously; (5) the contract was actually breached; (6) the act complained of was the proximate cause of the breach; and (7) damages resulted from the breach. Jones v. LeMoyne-Owen Coll., 308 S.W.3d 894, 908 (Tenn. Ct. App. 2009). Defendants' intentional interference with contract claim is based on the Plaintiffs' alleged physical seizure of textbooks and their intentional misrepresentation of the nature of the textbooks to MBS. (Doc. No. 34 at 12.)

Plaintiffs move to dismiss Defendants' counterclaim for intentional inference with contract because Defendants have not sufficiently alleged that Plaintiffs had knowledge of the contract between Defendants and MBS at the time of the alleged breach. See Sophia's Cure Inc. v. AveXis, Inc., No. 2:16-CV-865, 2017 WL 4541449, at *7 (S.D. Ohio Oct. 10, 2017) ("To be liable for tortious interference, a tortfeasor must not only have knowledge of the contract, he must have knowledge of the contract at the time of, or before, the alleged breach."); Restatement (Second) of Torts § 766 cmt. i (stating that even if the tortfeasor's "conduct is in fact the cause of another's failure to perform . . . the actor does not induce or otherwise intentionally cause that failure if he has no knowledge of the contract"). Defendants' counterclaims allege that "Plaintiffs were aware of the contract between C&N and MBS at least by and through their counsel." (Doc. No. 43 ¶ 39;

---

[6] Because the Court dismisses the First and Second Counterclaims on the aforementioned grounds, it declines to address whether an actual case or controversy exists with regards to the "Kirtsaeng issue."

Doc. No. 31 ¶ 42). However, there are no allegations detailing that Plaintiffs became aware of the contract, through their counsel or otherwise, prior to the alleged acts of interference. Accordingly, the Third Counterclaim will be dismissed with prejudice.[7]

## C. Fourth Counterclaim, for Intentional Interference with Business Relationship

The Tennessee Supreme Court has defined the elements of the tort of intentional interference with business relationships as follows: (1) an existing or prospective business relationship with specific or identifiable third persons; (2) the alleged interfering party knew of the existing or prospective business relationship; (3) this party intended to cause a breach or termination of the business relationship or business prospect; (4) that the interfering party used improper motive or means; and (5) the party seeking relief suffered damages. Tennison Bros. v. Thomas, No. W2013-01835-COA-R3CV, 2014 WL 3845122, at *10 (Tenn. Ct. App. Aug. 6, 2014) (citing Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002)). Concerning the fourth element of "improper motive or means," the plaintiff must demonstrate that the defendant's predominant purpose was to injure the plaintiff. Trau-Med, 71 S.W.3d at 701 n. 5. "Improper means" of interference includes:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules . . . violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship . . . and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

Id. (internal citations omitted).

---

[7] Because Defendants' Third Counterclaim will be dismissed on the aforementioned basis, Plaintiffs' additional arguments regarding the existence of a legal contract, breach, malice, and the Noerr-Pennington Doctrine need not be addressed.

Defendants' Fourth Counterclaim will be dismissed because Defendants have failed to plausibly allege that Plaintiffs used an improper motive or means. In regard to improper motive, the counterclaims allege:

> Plaintiffs were motivated to prevent the importation and resale of cheaper, lawful textbooks . . . to maintain their anticompetitive prices and economic advantage in the U.S. textbook market . . . By preventing . . . C&N and MBS from importing and/or facilitating the importation and resale of cheaper textbooks made lawfully abroad, Plaintiffs seek to reduce supply of lawful textbooks in the U.S. market and eliminate the secondary textbook market . . . to bolster their position as the only source for Plaintiffs' textbooks.

(Doc. No. 43 ¶ 47; Doc. No. 31 ¶ 50). Thus, Defendants allege that Plaintiffs were motivated by a concern over U.S. book prices and the secondary book market, not by a principal desire to injure Defendants. Defendants have failed to assert any other facts which would support a determination that Plaintiffs predominant motive was to injure them. In addition, Defendants' counterclaims contains no allegations of improper means. Rather, the counterclaims allege that Plaintiffs caused the shipment of textbooks that had been delivered to MBS to be seized because they believed the textbooks were counterfeit. (See Doc. No. 43 ¶¶ 15-17; Doc. No. 31 ¶¶ 15-17). In other words, these allegations support the notion that Plaintiffs seized the textbooks through proper means. Accordingly, Defendants' Fourth Counterclaim will be dismissed with prejudice.[8]

---

[8] Because Defendants' Fourth Counterclaim will be dismissed on the aforementioned basis, Plaintiffs' additional arguments regarding knowledge and the Noerr-Pennington Doctrine need not be addressed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss (Doc. No. 26) will be **GRANTED**. Defendants' counterclaims will be **DISMISSED WITH PREJUDICE**.

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE