IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PEARSON EDUCATION, INC., et al.,    )
                                     )
        Plaintiffs,                  )
                                     )     NO. 3:18-cv-00438
v.                                  )     JUDGE RICHARDSON
                                     )
C&N LOGISTICS, INC., et al.,        )
                                     )
        Defendants.           )

## MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion for Summary Judgment and Permanent Injunction (Doc. No. 111, "Motion"), supported by an accompanying Memorandum of Law (Doc. No. 112). Defendants White and Chadwell,[1] each acting *pro se*, have filed responses to the Motion (Doc. Nos. 130 and 134), and Plaintiffs have filed replies (Doc. Nos. 132 and 138). Defendants have also filed responses to Plaintiffs' Statement of Undisputed Material Facts (Doc. Nos. 135 and 137).

### BACKGROUND

Plaintiffs describe themselves as "leading educational publishers who develop, market, distribute, license, and sell a comprehensive range of traditional and digital educational content and tools to professionals and students." (Second Amended Complaint ("SAC"), Doc. No. 62). They allege that Defendants have distributed hundreds of counterfeit copies[2] of Plaintiffs'

---

[1] The Court entered default against Defendant C&N Logistics, Inc. (Doc. Nos. 59, 60 and 94).

[2] "Counterfeit" copies are ones made without authorization of the copyright owner and are also referred to as "pirated" copies. *Book Dog Books, LLC v. Cengage Learning, Inc.*, No. 2:12-cv-1165, 2013 WL 65465, at *2 (S.D. Ohio Jan. 4, 2013).

textbooks in the United States, and they assert claims against Defendants for copyright infringement, secondary copyright infringement, false designation of origin, and trademark counterfeiting. (*Id.*). Plaintiffs claim that Defendants are distributing, offering for sale, and/or selling counterfeit copies of Plaintiffs' textbooks; that is, unauthorized copies of Plaintiffs' copyrighted works. They also claim that the counterfeit copies bearing Plaintiffs' registered trademarks infringe those trademarks.

Via the Motion, Plaintiffs seek summary judgment as to liability for copyright infringement of 43 textbook titles and trademark infringement of four trademarks (identified in Doc. Nos. 113-116). Plaintiffs also seek, via the Motion, a permanent injunction to enjoin Defendants from infringing Plaintiffs' copyrights and trademarks. Plaintiffs do not, via the Motion, seek a ruling as to whether the alleged infringement was willful or seek summary judgment on the secondary copyright infringement and false designation of origin claims in the SAC or the amount of any damages.

The SAC asserts—and White admits (Doc. No. 67 at ¶ 13)—that Defendant White is the owner, president, and registered agent of Defendant C&N Logistics ("C&N"), a Tennessee corporation. (Doc. No. 62 at ¶¶ 12-13). Plaintiffs contend that Defendant Chadwell has a business association with C&N and with White and was involved in the procurement and/or distribution of the counterfeit copies at issue. (Doc. No. 62 at ¶ 14). In support of the Motion, Plaintiffs claim that all Defendants acted jointly and severally with regard to the alleged copyright and trademark infringement. (Doc. No. 112 at 19).

In response to the Motion, Defendants argue that: (1) there is no or insufficient proof that Defendants moved or distributed the textbook copies at issue; (2) there is no or insufficient proof of the chain of custody of the subject textbook copies to show that the copies inspected are the

same copies shipped by Defendants; (3) there is no or insufficient proof of a proper "quarantine procedure" for moving the suspected copies; (4) Plaintiffs have not produced purported expert reports concerning inspections for all the copies; and (5) the purported expert reports of Plaintiffs' "in-house experts" concerning the suspicious copies being counterfeit are insufficient (although Defendants have presented no expert testimony of their own). (Doc. Nos. 130 and 134).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the

summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018);

*Mangum v. Repp*, 2017 WL 57792 at ** 5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

Thus, as the movants here, Plaintiffs bear the initial burden of demonstrating that there are no genuine issues of material fact as to the elements of their claims and they are entitled to judgment as a matter of law on those claims. If Plaintiffs carry that burden, then the burden shifts to Defendants to set forth specific facts showing that there is a genuine issue for trial.

## COPYRIGHT INFRINGEMENT

Federal law provides a cause of action for any copyright owner against anyone who infringes the copyright by violating an "exclusive right" of that copyright owner. 17 U.S.C. § 501. The exclusive rights of a copyright owner include the rights to reproduce the copyrighted works; to prepare derivative works; to distribute copies by sale, rental, lease or lending; and to display the copyrighted work publicly. 17 U.S.C. § 106. Remedies for copyright infringement include injunctive relief (17 U.S.C. § 502) and damages (17 U.S.C. § 504).

A plaintiff alleging copyright infringement must prove that (1) it owns or is the exclusive licensee of a valid copyright and (2) the alleged infringer violated at least one exclusive copyright right prescribed by 17 U.S.C. § 106. *Average Joe's Entm't Grp., LLC v. SoundCloud, LTD.*, No. 3:16-cv-3294, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018).[3] The first element, ownership, is presumptively established by the copyright registration. *Kinman v. Burnop*, No. 3:18-cv-00809, 2020 WL 707583, at *3 (M.D. Tenn. Feb. 12, 2020); *Sands v. Fan Fest News, LLC.*, No. 3:18-cv-01353, 2019 WL 6715114, at *2 (M.D. Tenn. Dec. 10, 2019). "A certificate of copyright

---

[3] Put another way, to establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020); *In re Berge*, 953 F.3d 907, 920 (6th Cir. 2020).

registration constitutes *prima facie* evidence of the validity of the certificate and the facts stated in the certificate." *Tennessee Walking Horse Breeders' & Exhibitors' Ass'n v. Nat'l Walking Horse Ass'n*, No. 1:05-0088, 2007 WL 325774, at *5 (M.D. Tenn. Jan. 31, 2007).

"Copyright infringement . . . is at its core a strict liability cause of action, and copyright law imposes liability even in the absence of an intent to infringe the rights of the copyright holder." *Capitani v. World of Miniature Bears, Inc.*, No. 3:19-cv-00120, 2020 WL 4805729, at *2 n.3 (M.D. Tenn. Aug. 18, 2020) (quoting *Jacobs v. Memphis Convention and Visitors Bureau*, 710 F. Supp. 2d 663, 677–78 n.21 (W.D. Tenn. 2010)) (collecting cases and noting that this is a "fundamental tenet of the Copyright Act"). Therefore, intent or knowledge is not an element of copyright infringement.[4] *Pearson Educ., Inc. v. Labos*, No. 19 CIV. 487 (CM), 2019 WL 1949820, at *4 (S.D.N.Y. Apr. 23, 2019).

Here, Plaintiffs have filed a declaration from a representative of each Plaintiff publisher, stating that the publisher is the owner or holder of the exclusive rights[5] under copyright for the textbook titles at issue, along with copies of the relevant copyright registrations for each.[6] The

---

[4] While liability for copyright infringement is based on strict liability, and thus is imposed (or not imposed) irrespective of the infringer's mental state, "[f]or the purposes of damages . . . the infringer's mental state is important, as damages may be increased or decreased based on an infringer's knowledge of infringement." *Broadcast Music, Inc. v. The Hill, LLC*, No. 3:16-CV-230-HBG, 2017 WL 10398725, at *7 (E.D. Tenn. July 17, 2017) (quoting *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006)). Therefore, Defendants' claims of "good faith" are relevant only to the issues of willfulness and damages, not to the issue of liability that is the subject of the Motion.

[5] Some of the exclusive rights are held by Plaintiffs via licenses. *See, e.g.,* Doc. 113, ¶ 2.

[6] Richard Essig, Vice President of the Intellectual Property Group for Plaintiff Pearson Education, Inc. ("Pearson"), testified, via declaration, that Pearson owns or controls (through exclusive licenses) the copyrights in each of 28 textbooks identified in Doc. No. 113-1 that have allegedly

Court finds nothing in the responses of Defendants that disputes Plaintiffs' copyright ownership. Plaintiffs have carried their burden to show no genuine issue of material fact as to the first element (ownership) for the copyrights identified in the declarations at Doc. Nos. 113-116.

The second element tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter). *Sands,* 2019 WL 6715114, at *2. Plaintiffs thus have to show that Defendants violated at least one of Plaintiffs' exclusive rights in their copyrights; i.e., infringed their copyrights in the identified textbooks. Plaintiffs contend that Defendants have violated their rights by distributing counterfeit copies of Plaintiffs' textbooks. The Court discusses below the extent to which, with respect to particular textbooks, Plaintiffs have met their burden of showing the absence of a genuine issue of material fact as to this element.

## TRADEMARK INFRINGEMENT

Trademark infringement occurs when "any person . . . without the consent of the registrant[,] use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any

---

been infringed by Defendants. Essig also stated that Pearson owns the two trademarks "Pearson" and "Always Learning." (Doc. No. 113 at 1-2).

William Gadoury, Vice President of Strategic Sourcing and Supply Planning for Plaintiff Bedford, Freeman & Worth Publishing Group ("Macmillan Learning"), testified, via declaration, that Macmillan Learning owns the copyright in one work, *Lehninger Principles of Biochemistry*, Seventh Edition, that has allegedly been infringed by Defendants. (Doc. No. 114 at 1-2).

Steven Rosenthal, Senior Director of Anti-Piracy and Web Security for Plaintiff McGraw Hill, testified, via declaration, that McGraw Hill owns copyrights in the seven textbooks and one trademark identified in Doc. No. 115-1 that have allegedly been infringed by Defendants. (Doc. No. 115).

Jessica Stitt, Manager of Global Anti-Piracy for Plaintiff Cengage Learning, Inc. ("Cengage"), testified, via declaration, that Cengage owns the copyrights in seven textbook titles and one trademark allegedly infringed by Defendants. (Doc. Nos. 116 and 116-1).

goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1), *cited in Tailgate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 5208186, at *3 (M.D. Tenn. Oct. 16, 2019).

A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013); *see also Servpro Indus., Inc v. Woloski*, No. 3:17-cv-01433, 2020 WL 5629452, at *17 (M.D. Tenn. Sept. 21, 2020); *Capital Grille Holdings, Inc. v. Historic Hotels of Nashville, LLC*, 448 F. Supp. 3d 819, 830 (M.D. Tenn. 2020). Again, Plaintiffs have filed evidence of trademark ownership via declarations from the publishers (Doc. Nos. 113-3, 115-3, and 116-3), and Defendants have filed nothing to dispute Plaintiffs' ownership of the trademarks at issue. The Court finds that Plaintiffs have carried their burden to show no genuine issue of material fact as to this first element (ownership) for the trademarks identified in the declarations at Doc. Nos. 113, 115 and 116.

The trademarks at issue herein appear on the allegedly offending copies (Doc. Nos. 113 at ¶ 2, 115 at ¶ 2, and 116 at ¶ 2). Defendants do not dispute that these copies were bought, sold, and distributed in (interstate) commerce, and the evidence discussed below indicates that they were, thus satisfying the second element above.

The Court discusses below the extent to which Plaintiffs have met their burden of showing the absence of a genuine issue of material fact as to the third element.

## ANALYSIS

By way of background, Plaintiffs contend in support of the Motion (but without citations to the record) that Defendants acquired the allegedly counterfeit copies of textbooks from an

international counterfeiting ring based in Amman, Jordan and led by a man named Mazen Alali. (Doc. No. 112 at 2). Plaintiffs assert that Defendants dealt directly with Alali and that Alali is now the subject of a $28 million default judgment in Plaintiffs' favor issued by the U.S. District Court for the Northern District of Illinois in *Cengage Learning, Inc. v. Morena for Int'l Training*, Case No. 19-CV-1727. Plaintiffs also assert, without citations to the record, that Alali does business in his own name and under various fictitious names and aliases, including "Aika/Aika Trading," with his associate Sawsan Shaban. (Doc. No. 112 at 2).[7]

In support of the Motion and in their accompanying Statement of Undisputed Facts ("SUF") (Doc. No. 123), Plaintiffs group the alleged infringement claims according to the respective companies that allegedly purchased and/or distributed the particular copies. For ease of reference, the Court will address the claims in the same manner, *i.e.*, by (alleged) purchasing/distributing company, making reference to the SUF.

1. MBS Textbook Exchange ("MBS")

Richard Essig of Pearson testified that in April 2017, Defendants distributed to MBS multiple copies of ten different textbooks purporting to be Pearson's textbooks. (Doc. No. 113 at 2-3). He testified that MBS subsequently surrendered those copies to Pearson after suspecting them to be counterfeit. (*Id.* at 3). Steven Rosenthal of McGraw Hill, testified, via declaration, that in April 2017, Defendants distributed to MBS 40 copies of what purported to be McGraw Hill's textbook *Strategic Management*, Third Edition, and that MBS subsequently surrendered those

---

[7] White and Chadwell have admitted that they transported books supplied by Aika Company, which is allegedly located in Amman, Jordan (Contact: Sawsan Shabaan), to MBS Textbook Exchange (Doc. No. 22-4), that they acquired books from Mazen Alali or those with whom he works (Doc. No. 135 at ¶ 3), and that books were shipped to Defendants by Mazen Alali. (Doc. No. 137 at ¶ 3).

copies to McGraw Hill after suspecting them to be counterfeit. (Doc. No. 115 at 2). Both Essig and Rosenthal testified that these copies sold to MBS by Defendants were determined by Plaintiffs to be counterfeit. (Doc. No. 113 at 3 and Doc. No. 115 at 2; *see also* Doc. Nos. 122-1 and 122-4.). These offending copies are identified in paragraph 1 of the SUF.

Defendants represented, in support of their original Counterclaims[8] in this action, that C&N distributed these allegedly offending copies to MBS and that C&N's source was Aika Company in Amman, Jordan. (Doc. Nos. 22-1 at 6 and 22-4). Defendant White also attached to his original Counterclaim (Doc. No. 22) an invoice from C&N to MBS for copies of the 14 subject textbook copies. (Doc. No. 22-1 at 6).[9] Defendants have also, in response to the Motion, admitted that these particular textbook copies were shipped to them by Mazen Alali (Doc. Nos. 135 and 137 at ¶ 3). In their Counterclaims,[10] Defendants asserted that on or around April 10, 2017, MBS placed an order with C&N for copies of fourteen different textbooks–thirteen published by Pearson and one published by McGraw Hill. (Doc. Nos. 67 at 10 and 68 at 10).

---

[8] Defendants' original Counterclaims (Doc. Nos. 22 and 23) were filed in response to Plaintiffs' Complaint. Defendants filed the same Counterclaims (Doc. Nos. 31 and 43) and supporting documents (Doc. No. 32) in response to Plaintiffs' First Amended Complaint (Doc. No. 25). After Plaintiffs filed the SAC, Defendants again filed Counterclaims (Doc. Nos. 67 and 68), but they did not re-file the exhibits that had been filed with the original and second set of Counterclaims.

[9] The other invoices attached to the original Counterclaim as Exhibit 1 purport to show that the textbook copies sent to MSB were purchased from Pearson in London and McGraw-Hill Education in London and that at least some of the Pearson books were shipped from London to Amman, Jordan. (*Id.* at 2-5). The invoices are redacted, however, so it is impossible to tell what entity or person allegedly purchased these textbooks from Pearson and McGraw-Hill. (*Id.*). Defendants contend in their Counterclaims that these invoices demonstrate the original sale of the textbooks from McGraw-Hill and Pearson to Aika. (Doc. No. 67 at ¶ 19 and Doc. No. 68 at ¶ 21), but the Court cannot find this to be indisputable.

[10] The Court dismissed Defendants' Counterclaims on March 16, 2020. (Doc. No. 147).

Thus, Plaintiffs have demonstrated, through Defendants' own admissions, that Defendant C&N distributed the copies at issue in paragraph 1 of the SUF. Plaintiffs have also presented evidence that those copies were counterfeit. (Doc. Nos. 112-1 and 122-4). Defendants have not come forward with any relevant, admissible evidence to show that there is a genuine issue of material fact for trial as to these particular copies. Therefore, at least as it relates to C&N Logistics (see discussion on joint and several liability below), Plaintiffs are entitled to summary judgment on liability for copyright infringement as to the particular copies in paragraph 1 of Plaintiffs' SUF.

2. BookXchange, LLC ("BookXchange")

Essig testified that MBS also surrendered to Pearson certain suspicious copies of Pearson titles that MBS had bought from BookXchange, LLC. He stated that BookXchange, LLC "informed" Pearson it bought those copies from Defendants, but his declaration includes no evidence that the books were purchased from Defendants. (Doc. No. 113 at 3). Essig also testified that these copies were inspected and determined to be counterfeit. (Doc. No. 113 at ¶ 4 and Doc. No. 122-1). Plaintiffs asserted in their SUF that Defendants distributed to BookXchange LLC copies of eight textbooks with Pearson titles. *See* Doc. No. 123 at ¶ 4, citing Murphy Declaration Ex. 2 (Doc. No. 117-2).[11] Defendant Chadwell denies he had any relationship with BookXchange (Doc. No. 135 at ¶ 4), but Defendant White admits that textbooks with these titles were processed and shipped (although he does not say by whom) to BookXchange in Miami, Florida (Doc. No. 137 at ¶ 4). Both Defendants deny that the copies at issue here were counterfeit.

Plaintiffs have carried their burden to show no genuine issue of material fact that these eight copies were distributed by C&N to BookXchange (Doc. No. 117-2) and that these copies

---

[11] This exhibit is comprised of copies of invoices from C&N to BookXchange LLC for the textbooks asserted in ¶ 4 of the SUF.

were counterfeit (Doc. No. 122-1). Defendants have not come forward with any relevant, admissible evidence to demonstrate a genuine issue of material fact for trial on the issue of the copies in ¶ 4 of the SUF. Therefore, the Motion will be granted as to liability, at least as to Defendant C&N Logistics, on the textbook copies listed in SUF ¶ 4.

3. Southeastbooks and Ella's Bookshelf

Plaintiffs filed the declaration of Jenny Haehn, a risk manager and records custodian for Amazon.com, Inc., who testified therein that Shawn Chadwell is the merchant who operates an account on Amazon known as Southeastbooks and that Todd White is the merchant who operates the account on Amazon known as Ella's Bookshelf (or Ella's Bookshop). (Doc. Nos. 119 and 122-8). Ms. Haehn also provided documents showing books sold through Amazon by Southeastbooks and Ella's Bookshelf. (Doc. No. 122-8). Those lists include textbooks published by Pearson and McGraw Hill and listed in ¶ 13 of Plaintiffs' SUF. (Doc. No. 123 at ¶ 13).

Dan Seymour, an employee of Plaintiffs' counsel, filed a declaration in which he testified that he (and/or a team under his supervision) purchased a copy of Pearson's textbook *Sociology: A Down-to-Earth Approach*, 13th Edition, from an Amazon.com online storefront called Southeastbooks (Chadwell's account). (Doc. No. 118 and 118-1). Seymour stated that Pearson's representatives determined that the copy of Pearson's textbook it purchased from Southeastbooks was counterfeit. (*Id.*).

Plaintiffs have asserted, with no citation to the record, that the copies referenced in ¶ 13 of their SUF were acquired from Alali. (*Id.* at ¶ 14), but they have not pointed the Court to any proof of that fact. They claim (again with no citations) that Defendants sold these copies "after they began sourcing counterfeits from Alali," (Doc. No. 112 at 6), but that statement alone is not proof the specific copies at issue came from Alali or were counterfeit. Neither White nor Chadwell has

admitted this fact. (Doc. No. 135 at ¶ 14 and Doc. No. 137 at ¶ 14). Although the copies appear to have come from White and Chadwell, Plaintiffs have not provided evidence that these copies (from Southeastbooks and Ella's Bookshelf) listed in ¶ 13 were counterfeit (except for the one copy referenced in Seymour's Affidavit at Doc. No. 118). In support of the Motion on this point (Doc. No. 112 at 7), Plaintiffs cite to the deposition of Defendant White, pages 286-287, but those pages mention nothing about Southeastbooks or Ella's Bookshelf.

Therefore, Plaintiffs have carried their burden to show the absence of a genuine issue of material fact with regard to the one copy of Pearson's textbook, *Sociology: A Down-to-Earth Approach*, 13th Edition, that Mr. Seymour purchased from Defendant Chadwell's Southeastbooks account and then determined to be counterfeit. Defendants have not raised a genuine issue of material fact as to this one textbook copy purchase.[12] Accordingly, the Motion will be granted, at least as to Defendant Chadwell, as to this one textbook copy referenced in the Seymour declaration (Doc. No. 118).

With regard to the other allegedly counterfeit copies in paragraph 13 of the SUF, Plaintiffs have not carried their burden to demonstrate no genuine issue of material fact as to their being counterfeit, and the Motion as to those copies will be denied.

4. <u>RentU.com, LLC ("RentU"), Nebraska Book Company ("NBC"), ValoreBooks.com ("Valore")</u>

---

[12] Defendant Chadwell responded to this SUF by stating that he "does not operate Southeast Books storefront." (Doc. No. 135 at ¶10), but he cites nothing to rebut the declaration and documents attached to the declaration of Ms. Haehn, cited above. The Court finds that this statement by Chadwell is ambiguous in the sense that it is in present tense (and thus does not serve to deny that he operated the Southeastbooks account at relevant times in the past) and is insufficient to create a genuine issue of material fact as to his connection to this account and counterfeit textbook.

Plaintiffs have filed a declaration from Bryan Hockett, CEO for RentU.com, LLC, who testified that RentU purchased multiple copies of textbooks from Defendants White and Chadwell (Doc. No. 120). Hockett provided invoices for those purchases, with ISBN numbers for certain books (Doc. No. 122-9), but those invoices do not identify the titles or the publishers for these books, and Hockett's declaration provides no assertion, much less evidence, that the particular copies were counterfeit; neither have Plaintiffs provided such evidence through another source.

The declaration of Michele Murphy includes copies of invoices (which Murphy asserts were produced by Defendants in discovery in this case) showing sales from Defendant C&N to NBC and to Valore. (Doc. Nos. 117 at ¶¶ 5-6, 117-6, and 117-7). Those invoices include the textbook copies identified in ¶ 17 of Plaintiffs' SUF (Doc. No. 123 at ¶ 17), including copies of textbooks published by Pearson, Cengage, Macmillan Learning, and McGraw Hill. (Doc. Nos. 117-6 and 117-7). For example, attached to the Murphy declaration is an invoice from C&N to Nebraska Book Company for 20 copies of Macmillian Learning's *Lehninger Principles of Biochemistry*, 7th Edition. (Doc. No. 117-5 at 4). There is no proof on this invoice, however, that C&N acquired the copies from Alali or that the copies were counterfeit.

Indeed, Plaintiffs have not even alleged that the copies sold to RentU, NBC, and Valore were counterfeit. Plaintiffs' allegations, both in the SUF and their Memorandum in support of the Motion, simply state that these copies were acquired from Alali. Defendant Chadwell responded that these companies were not his clients, and while Defendant White responded that he has sold many titles to NBC, Valore and RentU.com for many years, he does not admit selling the copies referenced in the SUF, ¶ 17. (Doc. Nos. 135 and 137 at ¶ 17). The Court finds that Plaintiffs have not demonstrated the absence of a genuine issue of material fact as to whether these copies were counterfeit or whether Defendants are liable for the copies alleged in ¶ 17 of the SUF.

As noted, the Court cannot determine whether the copies sold to RentU were titles belonging to Plaintiffs, and Plaintiffs have not offered proof that any of these copies was counterfeit. Plaintiffs have presented proof that the identified copies were sold by C&N to NBC and Valore, but Plaintiffs must also present evidence to show that those specific copies were counterfeit, and they have not done so. Plaintiffs have not carried their burden, and the Motion as to these textbook copies referenced in SUF ¶ 17 will be denied.

5. BooksRun.com

Jessica Stitt of Cengage testified that Defendant White sold multiple counterfeit copies of four of Cengage's titles to BooksRun.com in April 2018, and she has provided copies of emails between Cengage and BooksRun to support that assertion. (Doc. Nos. 116 and 116-4).[13] The titles of these textbooks are listed in ¶ 12 of Plaintiffs' SUF (Doc. No. 123). Defendant Chadwell asserts this allegation has nothing to do with him, and Defendant White asserts simply that he has sold books to BooksRun for many years. (Doc. No. 135 at ¶ 12 and Doc. No. 137 at ¶ 12).

Plaintiffs have carried their burden to show that Defendant White distributed the textbook copies listed in paragraph 12 of the SUF, and Plaintiffs have also shown that those copies were counterfeit. Defendants have not come forward with relevant, admissible evidence to demonstrate a genuine issue of material fact on this issue. Plaintiffs are entitled to summary judgment and the Motion will be granted, at least as to Defendant White, as to liability for the Cengage textbook copies mentioned in SUF ¶ 12.

6. Amazon's Trade-In Program

---

[13] The email exchange between Cengage and Igor Zaitsev indicates that BooksRun.com received suspicious copies from White that Cengage later determined to be counterfeit. (Doc. No. 116-4).

Plaintiffs contend that Defendant White sold three copies, two of Pearson's and one of McGraw Hill's, through Amazon's trade-in program.[14] (Doc. No. 123 at ¶ 15). Ms. Murphy attached to her declaration a document (allegedly produced in discovery by Defendants) entitled "Your Trade-In Account" from Amazon.com, which appears to be an account for C&N and lists these three titles. (Doc. No. 117 at ¶ 5 and Doc. No. 117-4). That document has not been authenticated in any way, however. Defendant Chadwell asserts that this allegation does not relate to him, and Defendant White asserts only that he has sold many titles to Amazon through its trade-in program and that Amazon reviewed and accepted all of them as legitimate. (Doc. No. 135 at ¶ 15 and Doc. No. 137 at ¶ 15).

Plaintiffs also assert, with no citation to the record, that Defendant White acquired the copies in this paragraph from Alali. (Doc. No. 123 at ¶ 16). Neither White nor Chadwell admitted this fact. Even if they could connect these copies to Defendants, Plaintiffs have not carried their burden to show that the particular copies identified in paragraph 15 of the SUF were counterfeit. Accordingly, the Motion as to the textbooks in SUF ¶ 15 will be denied.

7. Buyers referenced as "KY" and "TN"

Plaintiffs assert that Defendants sold counterfeit copies of titles they acquired from Alali to buyers referred to as "KY" and "TN." (Doc. No. 123 at ¶ 18). The only citation Plaintiffs offer for this statement is to the deposition of Defendant White, cherry-picked and taken-out-of-context pages of which are attached to the declaration of Michell Murphy (Doc. No. 117). The page cited

---

[14] The Amazon Trade-in Program "allows customers to receive an Amazon.com Gift Card in exchange for over a million eligible items . . . ." Amazon Com Inc, 2013 WL 326330, at *9 (S.E.C. No - Action Letter Mar. 4, 2013).

for this assertion (p. 39 of the deposition, which is p. 3 of Doc. No. 117-8) does not mention KY or TN; nor does it mention or confirm that Defendants sold copies of the five titles mentioned in ¶ 18 of the SUF.[15] Defendant Chadwell asserts that these buyers were not his clients (Doc. No. 135 at ¶ 18). Defendant White asserts that he has sold titles of books owned by Mazen Alali to buyers referred to as "KY" and "TN." (Doc. No. 137 at ¶ 18). He does not state what those books were or otherwise admit the allegations of ¶ 18.

Plaintiffs have filed a copy of an email exchange that purports to be between Defendant White and Alali, dated November 3, 2017. That exchange reflects that an entity referred to as "KY" paid for 44 copies of *Campbell Biology* and 34 copies of *Lehninger Chemistry* and that a buyer referred to as "TN" purchased 62 copies of other textbooks having the same titles as some of Plaintiffs' textbooks. (Doc. No. 122-10 at 1-2). This email exchange, if authentic, shows that Defendant White was distributing textbooks for Alali,[16] but there is no evidence that these particular copies were inspected and found to be counterfeit. In other words, Plaintiffs simply have not connected the dots with regard to the copies of textbooks listed in ¶ 18 of the SUF, and the Motion will be denied as to these copies.

---

[15] Plaintiffs have the burden to point the Court to correct and specific pages in the record, including depositions where appropriate, and to provide the context and explanation necessary for the Court to understand the nature of the evidence and the content of the discussion in the deposition. Here, Plaintiffs did not carry that burden. For his part, Defendant Chadwell contends that the full content of all depositions should be presented to the Court. (Doc. No. 134 at 4). If Defendant Chadwell wished to have the full content of the depositions presented to the Court, he (like Plaintiffs) could have filed complete copies of those depositions. It is not the Court's responsibility to track down complete copies of depositions (or any other evidence) that are not filed by the parties.

[16] Plaintiffs seem to assume that the Court can find liability here simply if it finds that Defendants distributed copies of textbooks from Alali. They have cited no authority, however, supporting the Court's treating as counterfeit *all* textbook copies ever provided by Alali.

8. Radius International

Plaintiffs assert that they have inspected and determined to be counterfeit tens of thousands of textbook copies that originated from Alali and ultimately were surrendered to Plaintiffs by Radius International, a Chicago-area business. (Doc. No. 123 at ¶ 19). Plaintiffs have not shown, however, that the copies they inspected from Radius were distributed by Defendants. In fact, in their Replies (Doc. Nos. 132 and 138), Plaintiffs specifically state that they do not even make that claim. (Doc. Nos. 132 at 3 and 138 at 3).[17] Yet, in paragraph 20 of their SUF, Plaintiffs assert: "Defendants acquired books from the Chicago location referenced in paragraph 19 above and distributed them to others."(Doc. No. 123 at ¶ 20). Plaintiffs cite to the deposition of Defendant White ("White 1"), p. 54 for this assertion, but neither "White 1" nor "White 2," filed with the declaration of Michele Murphy, includes a page 54. (Doc. Nos. 117-8 and 117-9). Plaintiffs also cite to page 140 of the transcript of Defendant Chadwell's deposition, cherry-picked and taken-out-of-context pages of which are attached to the declaration of Ms. Murphy, but those pages (Doc. No. 117-10) contain no page 140. Plaintiffs have provided no further cites to the record for this assertion.[18]

_____

[17] After representing that "Plaintiffs do not make that claim [that the books from Alali were moved via Defendants]," Plaintiffs state: "Plaintiffs claim, and support with affirmative evidence, that 1) Defendants acquired the counterfeits in this case from Mazen Alali - - a fact Chadwell does not contest, and 2) '[t]hrough this case and the *Morena* case,' Plaintiffs have inspected tens of thousands of Alali-sourced books and determined them to be counterfeit." (Doc. Nos. 132 at 3 and 138 at 3). They provide no citation to the record for this statement either. As noted in the preceding footnote, the Court cannot find liability based solely on the fact that Defendants distributed copies from Alali.

[18] Again, the Court reminds Plaintiffs' counsel that it is Plaintiffs' burden to file complete exhibits, to show the Court what portions of the record support Plaintiffs' positions, and to point to specific evidence that is clearly ascertainable from what has been filed in order to do so.

Plaintiffs cite to the declarations of the publishers' representatives, but those declarations do not provide proof that connects Defendants with the copies inspected from Radius.[19] For example, Mr. Essig testified that he understood, "based on documents and information produced in the case," that Defendants acquired these copies from Alali and then distributed them. He does not cite to anything in the record to support that assertion. (Doc. No. 113 at 3). Mr. Gadoury testified that Radius surrendered to Macmillian Learning 130 copies of Macmillan Learning's title *Lehninger Principles of Biochemistry* that were being held by Radius in inventory for Alali, and those copies were determined to be counterfeit. (Doc. Nos. 114 at 2 and 122-3). Gadoury cites nothing in the record to connect these textbook copies with Defendants, however, and he simply asserts (using language very similar to Mr. Essig's), that "based on documents and information produced by the Defendants in this case," Defendants acquired these textbooks from Alali and sold them without authorization. (*Id.*).

Defendants White and Chadwell deny knowledge of the copies from Radius that were inspected by Plaintiffs. Plaintiffs have not shown that these copies, identified in ¶ 19 of the SUF, were distributed by Defendants and, therefore, the Motion as to these copies will be denied.

9. Unnamed Purchasers

Finally, Plaintiffs allege that Defendant White, working with Alali, distributed copies of textbooks (including copies of eight of Plaintiffs' titles) in the U.S. to unnamed purchasers.[20] (Doc.

___

[19] Plaintiffs do not even allege in this SUF that the books referenced were copies of Plaintiffs' textbooks.

[20] For this assertion, Plaintiffs cite only to Ex. 8 to Ms. Murphy's declaration (Doc. No. 117-7). Exhibit 8 is not authenticated in any way and is identified by Ms. Murphy simply as "documents related to textbook distributions that Defendants produced in discovery in this action." Nothing

No. 123 at ¶ 21). Plaintiffs do not state that these copies were counterfeit, and without such an assertion, the Court does not see that this statement is relevant. Plaintiffs have not asserted that the copies identified in ¶ 21 were counterfeit and have failed to support the (apparently irrelevant) assertions of this paragraph with relevant, admissible evidence. Thus, Plaintiffs have not carried their burden to show an absence of a genuine issue of material fact or that they are entitled to judgment as a matter of law on this issue presented in ¶ 21 of the SUF. The Motion as to these copies will be denied.

     10. <u>Trademarks</u>

     Plaintiffs also contend that Defendants have infringed Pearson's and Cengage's trademarks. (Doc. No. 62 at ¶¶ 20, 21 and 56; Doc. Nos. 113 at 5 and 116 at 4).[21] As noted above, to show trademark infringement, Plaintiffs must demonstrate that (1) they own the trademarks, (2) Defendants used the trademarks in commerce without authorization, and (3) the use of the alleged infringing trademarks is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013); *Servpro Indus., Inc v. Woloski*, No. 3:17-cv-01433, 2020 WL 5629452, at *17 (M.D. Tenn. Sept. 21, 2020); *Capital Grille Holdings, Inc. v. Historic Hotels of Nashville, LLC*, 448 F. Supp. 3d 819, 830 (M.D. Tenn. 2020).

     As explained above, Plaintiffs have established the first two elements with regard to the copies for which the Court has found liability above. With regard to the third element, courts have

---

about Ex. 8 indicates that the titles are published by Plaintiffs, that the books were distributed by Defendants, or that the copies were counterfeit. (*Id.*).

[21] Plaintiffs have represented that Plaintiff McGraw Hill is not seeking summary judgment as to its trademark. (Doc. No. 112 at n.2)

found that a counterfeit mark is "inherently confusing." *Delta Air Lines, Inc. v. Influence Direct, LLC*, No. 3-14-0926, 2016 WL 310068, at *3 (M.D. Tenn. Jan. 15, 2016) (citing *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 241 (S.D.N.Y. 2013)); *see also Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437 (S.D.N.Y. 2020) (counterfeit marks are inherently confusing). Given that a counterfeit mark is "inherently confusing," consumer confusion is presumed in such cases. *Delta Air Lines,* 2016 WL 310068, at *3.

Therefore, because the trademarks are contained on the allegedly infringing copies themselves, to the extent counterfeit copies were distributed by Defendants, any trademarks on those copies were also infringed.

11. <u>Defenses</u>

As noted above, Defendants argue that there is no or insufficient proof that Defendants moved or distributed the textbook copies from Alali at issue. The Court has addressed this argument with respect to each claim above separately.

Defendants also contend that Plaintiffs have presented no or insufficient proof of the chain of custody of the subject copies to show that the copies inspected and declared counterfeit are the same copies shipped by Defendants. Relatedly, Defendants also claim that there is no or insufficient proof of a proper "quarantine procedure" for moving the suspected textbook copies. They have cited no legal authority that such a procedure is required or legal authority as to their chain-of-custody claim.

Essig testified that MBS surrendered the particular Pearson textbook copies at issue to Pearson after suspecting them to be counterfeit and that, at his (Essig's) direction, the copies were inspected and found to be counterfeit. (Doc. No. 113 at ¶ 4). Similarly, Rosenthal testified that MBS surrendered the particular McGraw Hill copies at issue to McGraw Hill after suspecting them

to be counterfeit and he inspected those particular copies and determined them to be counterfeit. (Doc. No. 115 at ¶ 3). Such testimony meets the minimum requirements to show that the copies inspected were copies from Defendants that were surrendered to Plaintiffs by MBS. True, such testimony is not conclusive on these issues, and Defendants were free to contest Plaintiffs' position on the issue. But other than conclusory statements, Defendants have not raised any particular issue to dispute this testimony of the publisher representatives.

Defendants attempt to rely on a copy of an unauthenticated picture that purportedly "suggests" improper moving or quarantine procedures. (Doc. Nos. 130-31). That picture is useless to support Defendants' claim; it simply shows a box, with no identifying marks as to the contents or from whom or to whom it is being sent. Defendants have presented no relevant affirmative evidence to demonstrate a genuine issue of material fact as to Plaintiffs' assertions about the chain of custody of the textbook copies as to which the Court has found liability.

Finally, Defendants argue that Plaintiffs have not produced expert reports concerning inspections for all the copies at issue and that the purported expert reports concerning the suspicious copies being counterfeit are insufficient. The Court has addressed whether there is evidence of counterfeiting with regard to each specific claim above. As for the "sufficiency" of Plaintiffs' experts, Defendants have done nothing more than baldly challenge their reports in general. Plaintiffs presented reports to support their claims of counterfeiting, and Defendants have not come forward with competing expert reports, or any reports at all, to demonstrate a genuine issue of material fact with respect to the counterfeit nature of these offending textbook copies.

Essig testified that the Pearson textbooks from MBS and BookXchange were inspected by Diane Peirano, Senior Intellectual Property Enforcement Analyst within the IP Protection Group. (Doc. No. 113 at ¶ 4). Ms. Peirano's report concerning that inspection is reflected in the

confidential notes filed under seal at Doc. No. 122-1. There is no indication that Defendants deposed Ms. Peirano to question her about her inspection or challenge her work. In fact, Defendants have presented no specific criticism of Ms. Peirano's analysis or determination that these copies were counterfeit.

Similarly, Stitt testified that as Manager of Global Anti-Piracy for Plaintiff Cengage, she inspected the Cengage titles at issue sold by Defendant White to BooksRun.com and subsequently surrendered by BooksRun to Cengage, and she determined that they were counterfeit. (Doc. No. 116 at ¶ 3). Her report concerning that inspection is reflected in the confidential notes filed under seal at Doc. No. 122-6. There is no indication that Defendants deposed Ms. Stitt to question her about her inspection or challenge her work, and Defendants have presented no specific criticism of Ms. Stitt's analysis or her determination that these copies were counterfeit.

Finally, with regard to the one purchase from Southeastbooks, Seymour (who states he has been involved in anti-piracy matters for over 20 years and works in investigation and enforcement relating to counterfeiting) testified that Pearson's representative inspected the textbook copy and determined that it was counterfeit. (Doc. Nos. 118 at ¶ 3 and 118-2). There is no indication that Defendants deposed Seymour to question him about this inspection or challenge the determination that this particular copy was counterfeit. Defendants have presented no specific criticism of that determination and no affirmative, relevant evidence to challenge it.

As explained above, a party asserting that a fact is genuinely disputed must support that assertion by citing materials in the record. Defendants have failed to do so. For these reasons, Defendants' asserted defenses do not change the results explained above.

12. Conclusion

For the reasons explained above, the Court has found copyright and trademark liability as follows:

(1) with regard to the copies identified in ¶ 1 of the SUF (those sold to MBS), as to Defendant C&N;

(2) with regard to the copies identified in ¶ 4 of the SUF (those sold to BookXchange), as to Defendant C&N;

(3) with regard to one textbook identified in ¶ 13 of the SUF (*Sociology: A Down-To-Earth Approach*, published by Pearson), as to Defendant Chadwell; and

(4) with regard to the textbooks identified in ¶ 12 of the SUF, published by Cengage (sold by BooksRun), as to Defendant White.

## JOINT AND SEVERAL LIABILITY

When multiple parties infringe a copyright, the parties are jointly and severally liable. *Corbis Corp. v. Starr*, No. 3:07CV3741, 2009 WL 2901308, at *4 (N.D. Ohio Sept. 2, 2009) (citing *NCR Corp. v. Korala Assoc., Ltd.,* 512 F.3d 807, 816 (6th Cir.2008)) (noting that the common law doctrine that "one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor" applies in the context of copyright infringement); *see also Purple Rabbit Music v. JCJ Prods., L.L.C.*, No. 3:18-cv-00520, 2019 WL 6682199, at *6 (M.D. Tenn. Dec. 5, 2019) (because infringement flowed from the joint conduct of all of the defendants, their liability for the awarded damages was joint and several). Copyright infringement is a tort, for which all who participate in the infringement are jointly and severally liable. *Broad. Music, Inc. v. The Hill, LLC*, No. 3:16-CV-230-HBG, 2017 WL 10398725, at *6 (E.D. Tenn. July 17, 2017); *Controversy Music v. McClellan*, No. 08-13805, 2009 WL 3012026, at *2 (E.D. Mich. Sept. 17, 2009).

A corporate officer is jointly and severally liable with his corporation for copyright infringement if he: (1) has the right and ability to supervise the infringing activity, and (2) has a direct financial interest in such activities. *Singletary Constr., LLC v. Reda Home Builders, Inc.*, No. 3:17-cv-374-JPM, 2018 WL 10150991, at *9 (M.D. Tenn. Nov. 8, 2018). "The test for finding a corporate officer jointly and severally liable with his corporation for copyright infringement is whether the officer has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Broad. Music, Inc. v. Georgia Rib Co., Inc.*, 166 F. Supp. 3d 1329, 1333 (N.D. Ga. 2014). Under this vicarious liability standard, liability for copyright infringement is not limited to those individuals who directly engage in infringing activity. *Controversy Music*, 2009 WL 3012026, at *2. Thus, individual defendants may be held vicariously liable when they have the right and ability to supervise the infringing activity and have a financial interest in the exploitation of copyrighted materials. *Id.*

In their Memorandum of Law in support of their Motion, Plaintiffs assert (with no citation to the record) that Defendants White, Chadwell, and C&N acted jointly in their infringing enterprise.[22] (Doc. No. 112 at 19). The Court perhaps could overlook the lack of such a citation if Plaintiffs at least provided a citation to establish the underlying facts from which the Court could infer the overarching conclusion that Defendants acted jointly. But Plaintiffs fail to do so. In their only reference to any such alleged underlying facts, Plaintiffs state, with no citation to the record, that Defendants shared the profits from the sale of counterfeits, worked together with Alali to

_____

[22] In their responses to the Motion (Doc. Nos. 130 and 134), Defendants have not specifically presented any opposition to Plaintiffs' claim of joint and several liability. The Court thus decides such claim without any real input from Defendants, including without Defendants' citation of evidence that would serve to raise a genuine issue of material fact as to any issue relating to joint and several liability on which Plaintiffs had met their initial burden of showing the absence of a genuine issue of material fact.

source textbooks, and jointly contributed to the overall textbook business that extensively infringed Plaintiffs' intellectual property rights. (Doc. No. 112 at 19-20). These facts may be obvious to Plaintiffs, but the Court must have support for them in the record in order to accept them as true.

In their SUF, Plaintiffs assert that Defendants White and Chadwell worked together and each played a role in distributing Alali-sourced textbooks to U.S. buyers. For this assertion, Plaintiffs cite only the deposition of White ("White 2") at page 346. (*See* Doc. No. 123 at ¶ 9). The White 2 deposition excerpt (Doc. No. 117-9), page 346, makes no mention whatsoever of Chadwell. Plaintiffs may believe the discussion on this page concerns Chadwell; but, again, the Court cannot assume that the deponent is talking about any particular person (since none is named) and Plaintiffs have failed to provide any context for this discussion by failing to file the entire, or at least surrounding pages of the, deposition. The Court cannot find, based solely upon the evidence cited in paragraph 9 of the SUF, that White and Chadwell worked together or that each played a role in distributing counterfeit textbooks.

To this particular assertion in Plaintiffs' SUF, Defendant Chadwell responded (through counsel) that he "at most provided clerical and analysis on Request for Quotes on some occasions but not all." (Doc. No. 135 at ¶ 9). To the extent Plaintiffs attempt to rely upon this response, this unsworn, qualified statement of Chadwell's counsel is not the kind of thing—not the kind of direct and probative admission of an opposing party—that enables a summary judgment movant to meet its initial burden of showing the absence of a genuine issue of material fact. Defendant White, for his part, responded (through counsel) to this SUF that he and Chadwell "have worked together on many projects for more than a decade." (Doc. No. 137 at ¶ 9). This unsworn, ambiguous statement of counsel likewise does not enable Plaintiffs to meet their burden of showing an absence of a

genuine issue of material fact as to whether these three Defendants acted jointly in the alleged infringing activity.

Nonetheless, there is other evidence before the Court that supports this claim of joint and several liability at least as to C&N and White. In particular, there is evidence supporting the conclusion that Defendant White has admitted he is the owner, president, and registered agent of C&N Logistics (Doc. No. 67 at ¶ 13; Doc. No. 131 at 1). His response to Plaintiffs' SUF (Doc. No. 137) reflects involvement with receiving, processing, analyzing, transporting, shipping, and selling copies of books and being paid to do so.[23] Moreover, White has presented no evidence that C&N acted at anyone else's direction or under anyone else's supervision other than his own.

The Court finds that Plaintiffs have met their initial burden of showing the absence of a genuine issue of material fact as to whether White is someone who meets the two-part test (having the right and ability to supervise the infringing activity of C&N and having a financial interest in any exploitation of copyrights or trademarks by C&N) for being liable for C&N's infringing activity. In response, White has provided nothing to demonstrate a genuine issue of material fact on this issue.

Defendant Chadwell has admitted that he has a business association with C&N Logistics. (Doc. No. 68 at ¶ 14), and he admits working together with White (Doc. No. 134 at 5). Plaintiffs have produced emails from Defendant White in which he acknowledged working with Defendant Chadwell (Doc. No. 122-10 at 2-3), and Defendant Chadwell has admitted involvement with the MBS textbooks at issue. (Doc. No. 135 at ¶¶ 1 and 3). There is no evidence that Chadwell was a

---

[23] White's Counterclaim asserts that C&N "is in the general business of logistics and freight transportation, including coordination and delivery of freight by truck, ship, and aircraft nationally and internationally, shipping fulfillment, and collection and payment services." (Doc. Nos. 22 at 10 and 67 at 10).

corporate officer, however, and Plaintiffs have not shown that he directed any activities of the other Defendants or supervised anyone else's infringing activity. The above-referenced facts admitted by Chadwell (or acknowledged by White) alone are not specific enough to show an absence of a genuine issue of material fact as to whether Chadwell is jointly and severally liable under the tests set forth above, for any infringing activity of the other Defendants.

The Court finds that as an officer and owner of C&N, Defendant White is jointly and severally liable for any copyright or trademark infringement attributed to C&N based on the standards set forth above, and Defendant Chadwell is liable solely for his own actions.

## PERMANENT INJUNCTION

As indicated above, Plaintiffs also ask, via the Motion, for a permanent injunction, enjoining Defendants from infringing Plaintiffs' trademarks and copyrights. The Court finds that it is premature to issue a permanent injunction at this time. This case is far from over. Liability has been found as to only some of the alleged infringing copies, not all. Liability has been found as to copyright and trademark infringement with regard to those copies, but issues remain as to willfulness and damages as to any infringement, secondary copyright infringement, false designation of origin, or damages.

The Court declines to issue a permanent injunction piecemeal. "[N]ormally a permanent or final injunction is to be granted only after a right thereto has been established at a full trial on the merits." *United States v. Al-Hisnawi*, No. 20-CR-20058, 2020 WL 2315878, at *3, n.2 (E.D. Mich. May 11, 2020) (quoting *Skinner v Unknown Grandson*, No. 05-70556, 2006 WL 1997392, at *11 (E.D. Mich. July 14, 2006)); *Beebe v. Birkett*, 749 F. Supp. 2d 580, 599 (E.D. Mich. 2010) ("The undersigned suggests that summary judgment on plaintiff's ultimate claim for an injunction . . . is premature given the unresolved issues on the merits of plaintiff's timely asserted . . . claim");

*F.T.C. v. Medical Billers Network, Inc.,* 543 F.Supp.2d 283, 323 (S.D.N.Y.2008) (where plaintiff's claims had not been completely resolved on summary judgment, the scope of any permanent injunction that might ultimately issue was undetermined and entry would be premature); *see also Calmes v. United States,* 926 F. Supp. 582, 591 (N.D.Tex.1996) (Unlike a preliminary injunction, which is intended to preserve the status quo pending resolution of the issues, normally a permanent or final injunction is to be granted only after a right thereto has been established at a full trial on the merits).

Permanent injunctions are a form of relief, and we are not yet at the relief stage of this case. *See Ravenna Rd. Mgmt. v. City of Twinsburg*, 450 F. Supp. 2d 782, 783, n.1 (N.D. Ohio 006); *Skycasters, LLC v. Hughes Network Sys., LLC*, No. 5:06 CV 1094, 2006 WL 8454315, at *1, n.4 (N.D. Ohio June 2, 2006) (plaintiff's request for permanent injunction found to be premature, to be decided at the remedy stage; preliminary injunction remained in force until further order of this Court).[24] Therefore, Plaintiffs' Motion for a permanent injunction will be denied.

## CONCLUSION

Accordingly, the Motion will be granted in part and denied in part. Summary judgment will be granted for Plaintiffs against Defendants as to liability for trademark and copyright infringement as follows:

(1) with regard to the copies identified in ¶ 1 of the SUF (those sold to MBS), as to Defendants C&N and White;

---

[24] Plaintiffs never asked for a preliminary injunction, so it is not like Plaintiffs can make the (unconvincing) claim that they are merely asking the Court to make a small leap from a preliminary to a permanent injunction.

(2) with regard to the copies identified in ¶ 4 of the SUF (those sold to BookXchange), as to Defendants C&N and White;

(3) with regard to one textbook identified in ¶ 13 of the SUF (*Sociology: A Down-To-Earth Approach*, published by Pearson), as to Defendant Chadwell; and

(4) with regard to the textbooks identified in ¶ 12 of the SUF, published by Cengage (sold by BooksRun), as to Defendant White.

Plaintiffs' Motion for a permanent injunction will be denied.

Remaining for trial are the issues of trademark and copyright infringement as to those copies alleged in the Motion for which liability was not found; the issues of willfulness and damages as to any infringement; the issues of secondary copyright infringement and false designation of origin; and the issues of damages.

An appropriate order will be entered.


_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE